# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
November 18, 2015 Session

## BRENDA OSUNDE, ET AL. v. DELTA MEDICAL CENTER

**Appeal from the Circuit Court for Shelby County**
**No. CT00039813     Robert Samual Weiss, Judge**
_____

**No. W2015-01005-COA-R9-CV – Filed February 10, 2016**
_____

This interlocutory appeal concerns the trial court's partial dismissal of a case concerning alleged negligence committed against Plaintiff/Appellee Brenda Osunde ("Mrs. Osunde"). Mrs. Osunde filed a complaint in the trial court alleging a medical malpractice claim against DMC-Memphis, Inc. ("DMC"), as well as a claim for common law negligence, after she sustained a fall while at DMC's hospital, Delta Medical Center. When Mrs. Osunde failed to disclose any experts pursuant to the trial court's scheduling order, DMC moved for summary judgment. In adjudicating DMC's motion, the trial court drew a distinction between Mrs. Osunde's "health care liability action," which it dismissed for her failure to produce an expert, and Mrs. Osunde's common law negligence claim, which it ruled should proceed to trial. After ruling on the motion for summary judgment, the trial court stayed further proceedings and granted DMC leave to pursue interlocutory review in this Court. Although we agree with DMC that all of Mrs. Osunde's asserted claims give rise to a "health care liability action" within the meaning of the Tennessee Code, we disagree with DMC's assertion that expert testimony is required to prove Mrs. Osunde's allegations of negligence. As such, we reverse the trial court's order to the extent that it purports to dismiss Mrs. Osunde's health care liability action, and we affirm the trial court's decision to allow this case to proceed to trial.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court Affirmed in Part, Reversed in Part, and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD P.J., W.S., and BRANDON O. GIBSON, J., joined.

Jonathan T. Martin, Joshua A. Hillis, and Taylor B. Davidson, Memphis, Tennessee, for the appellant, DMC-Memphis, Inc. d/b/a Delta Medical Center.

Les Jones and Charles Silvestri Higgins, Memphis, Tennessee, for the appellees, Brenda Osunde and Samuel Osunde.

## OPINION

### Background and Procedural History

On October 14, 2011, Mrs. Osunde presented to Delta Medical Center complaining of pain in her left ankle.[1] After she arrived at the hospital, Mrs. Osunde was taken to the radiology department for an x-ray. In connection with the x-ray, a radiology technician instructed Mrs. Osunde to stand up on a stool. According to Mrs. Osunde's deposition testimony, the stool presented by the technician was a wooden stool that stood approximately twelve to eighteen inches high. Mrs. Osunde asserted that the stool did not have any resistance, and she claimed that it lacked rubber tips and handrails. When Mrs. Osunde attempted to get off the stool after the completion of the x-ray, she fell and sustained a right fibular fracture. She explained in her deposition testimony that the stool had moved when she stepped down and asserted that the weight of the stool had shifted from under her. Although the radiology technician had attempted to assist Mrs. Osunde in her dismount from the stool, Mrs. Osunde claimed that the technician lacked a "professional" grip and had not been prepared for a potential fall.

Shortly after her fall from the stool, Mrs. Osunde was taken to the operating room at Delta Medical Center to repair the fibular fracture she sustained. A syndesmotic screw was placed in her right ankle during the course of surgery, and a few weeks later, she was fitted for a leg cast. On March 1, 2012, Mrs. Osunde underwent a second surgery to have the syndesmotic screw in her right ankle removed, and on March 23, 2012, sutures were removed. Although she was subsequently discharged from medical treatment, Mrs. Osunde was instructed to follow up on an as-needed basis. According to Mrs. Osunde, the injuries she sustained as a result of her fall prevented her from returning to her job as a registered nurse, and she was eventually terminated from her employment.

On January 30, 2013, Mrs. Osunde[2] filed suit against DMC[3] in the Shelby County Circuit Court seeking to recover damages related to her fall. In addition to asserting a claim

---

[1] Our factual recitation concerning the background of Mrs. Osunde's treatment is taken from the allegations in Mrs. Osunde's complaint and her deposition testimony.

[2] We note that Mrs. Osunde's husband, Samuel Osunde, was also named as a Plaintiff in this case. Mr. Osunde has asserted a claim for loss of consortium. Although throughout this Opinion we refer primarily to Mrs. Osunde in our description of the actions taken before the trial court and this Court, we do not intend to suggest that Mr. Osunde is not a participating party, or that his consortium claim is not at stake. However, as Mr. Osunde's claim is derivative of Mrs. Osunde's sought-after recovery, we generally refer only to Mrs. Osunde for ease of convenience.

for medical malpractice, Mrs. Osunde's complaint asserted a claim for common law negligence. The complaint contended, *inter alia*, that DMC had failed to comply with the duty of care owed to Mrs. Osunde, that DMC had failed to take appropriate measures to protect patients who are prone to falling, and that DMC had failed to provide a safe and secure environment for Mrs. Osunde.

DMC filed an answer to Mrs. Osunde's complaint on February 22, 2013. In its answer, DMC denied any negligence on its part and moved for a dismissal of all claims filed against it. Nearly a year later, on February 14, 2014, the trial court entered a scheduling order pursuant to Rule 16 of the Tennessee Rules of Civil Procedure. In relevant part, the scheduling order required that Mrs. Osunde reveal her expert witnesses to defense counsel by April 28, 2014. No witnesses were ultimately disclosed in accordance with this deadline.

On October 31, 2014, DMC moved for summary judgment based on Mrs. Osunde's failure to disclose any expert witnesses. A statement of undisputed material facts and a supporting memorandum of law were filed contemporaneous to the motion. In its supporting memorandum of law, DMC argued that the adjudication of Mrs. Osunde's lawsuit would involve "complicated and technical information which is beyond the general knowledge of a jury," and as a result, contended that the case could not go forward without expert proof.

On December 1, 2014, Mrs. Osunde filed a response opposing DMC's motion for summary judgment. Mrs. Osunde's response argued that DMC's motion had completely ignored her assertion of a common law negligence claim. Moreover, Mrs. Osunde noted that it had become apparent through discovery that her case against DMC sounded only in ordinary negligence and not medical malpractice. She stated that she was willing to amend her complaint to strike the medical malpractice claim, while preserving her asserted claim for common law negligence. With respect to the latter claim, Mrs. Osunde contended that no expert proof was required to support it. She argued that an ordinary trier of fact would be able to determine, based on everyday experiences, that providing a faulty stool to her constituted negligence on the part of DMC. Inasmuch as expert proof was not required to establish her claim, Mrs. Osunde contended that DMC's motion for summary judgment should be denied.

On March 16, 2015, the trial court entered an order granting in part and denying in part DMC's summary judgment motion. Specifically, the trial court's order stated as follows:

[3] The complaint filed by Mrs. Osunde originally identified two Defendants, Delta Medical Center and DMC-Memphis, Inc. In February 2013, the trial court entered a consent order that corrected the style of the case and dismissed the improperly named non-legal entity, Delta Medical Center.

- 3 -

[T]he Court finds that Plaintiff's health care liability action against Defendant should be dismissed as a matter of law. The Court finds, however, that Plaintiffs have pled a claim for common law negligence against Defendant, and that material issues of disputed fact exist regarding Plaintiff's common law negligence claim. Accordingly, summary judgment as to Plaintiff's common law negligence claim against Defendant should be denied.

Subsequent to the entry of this order, DMC filed a motion for leave to file an interlocutory appeal. In a memorandum filed in support of its motion for leave, DMC argued that all of Mrs. Osunde's theories of liability, including the denominated ordinary negligence claim, should have been considered as being contained within a single "health care liability action." DMC contended that the trial court's order would likely be reversed on appeal, and it suggested that an interlocutory appeal would prevent needless litigation within the trial court. The trial court granted DMC's motion for leave to file an interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure on May 27, 2015. Incident to its decision to grant DMC leave to file a Rule 9 appeal, the trial court also entered a stay as to further trial proceedings.

After the trial court granted DMC leave to file an interlocutory appeal, an application for a Rule 9 appeal was filed in this Court. In its Rule 9 application, DMC proposed that the following question should be presented for our review:

Whether the trial court erred in denying Defendant's motion for summary judgment regarding Plaintiffs' ordinary negligence claim due to an incorrect application of the clear and unambiguous definition of a "health care liability action" and how such actions are handled pursuant to the Tennessee Health Care Liability Act, codified at Tennessee Code Annotated section 29-26-101, et seq.?

Mrs. Osunde filed a response to DMC's Rule 9 application on June 12, 2015, and on July 2, 2015, we granted the application for appeal.

## Issue Presented

We granted this interlocutory appeal to determine whether the trial court erred in its adjudication of DMC's motion for summary judgment in light of the standards and definitions contained within the Tennessee Health Care Liability Act.

## Standard of Review

A motion for summary judgment should only be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. Far from a disfavored procedural shortcut, summary judgment procedure remains an "important vehicle for concluding cases that can and should be resolved on legal issues alone." *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993) (citations omitted). Although a grant of summary judgment can save both the parties and the court the time and expense of trial, a request for summary judgment should be denied when genuine issues or disputes of material fact are present. *Action Chiropractic Clinic, LLC v. Hyler*, 467 S.W.3d 409, 411 (Tenn. 2015) (citing *Parker v. Holiday Hosp. Franchising, Inc.*, 446 S.W.3d 341, 346 (Tenn. 2014)). Because the trial court's ruling on a summary judgment motion is a question of law, we review the matter *de novo*. *Revis v. McClean*, 31 S.W.3d 250, 252 (Tenn. Ct. App. 2000) (citing *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997); *McClung v. Delta Square Ltd. P'ship*, 937 S.W.2d 891, 894 (Tenn. 1996)).

## Discussion

As we have already discussed, DMC moved for summary judgment when Mrs. Osunde failed to identify any expert witnesses in accordance with the trial court's scheduling order. DMC argued that the absence of expert testimony was fatal to the maintenance of Mrs. Osunde's cause of action. When the trial court reviewed DMC's request for summary judgment, it dismissed Mrs. Osunde's "health care liability action" for her failure to produce an expert, but it allowed her common law negligence claim to proceed to trial. As is evident from its oral ruling on the motion for summary judgment,[4] the trial court considered that dismissal of the common law negligence claim would be inappropriate inasmuch as no expert testimony was required to support it. Our present review is devoted to determining whether the trial court's decision on this matter was in error. As we perceive it, a thorough analysis of the issue requires us to answer two questions. First, are the claims asserted within Mrs. Osunde's complaint cognizable outside the context of a "health care liability action" as that term is statutorily defined? Second, assuming that our answer to the first question is in the negative, can Mrs. Osunde's allegations nevertheless be supported in the absence of expert proof? Before we address these questions, a brief review of the law's development in this area is appropriate.

---

[4] We note that the trial court's oral ruling on DMC's motion for summary judgment was incorporated by reference into its March 16, 2015 order.

*The Evolution of Negligence Claims in the Medical Setting*

Under traditional legal principles, our courts recognized that not every negligence action asserted against a hospital or doctor was one for medical malpractice. *Estate of Doe v. Vanderbilt Univ., Inc.*, 958 S.W.2d 117, 120 (Tenn. Ct. App. 1997). Indeed, the courts recognized that some claims against medical providers sounded only in ordinary negligence. Drawing this distinction had several important consequences. For example, although medical malpractice claims typically required expert proof, claims asserting ordinary negligence did not. *See, e.g.*, *Peete v. Shelby Cnty. Health Care Corp.*, 938 S.W.2d 693, 696 (Tenn. Ct. App. 1996) (holding that expert proof was not required for an asserted claim of ordinary negligence). In addition, distinguishing a medical malpractice claim from an ordinary negligence claim was significant in determining the applicable statute of limitations that governed a plaintiff's case. *See Gunter v. Lab. Corp. of Am.*, 121 S.W.3d 636, 639 (Tenn. 2003) ("To determine which limitations statute controls Gunter's claim against the laboratory, we must first decide whether the claim sounds in medical malpractice or negligence."). However, because "[m]edical malpractice is but one particular type of negligence," *Patterson v. Arif*, 173 S.W.3d 8, 11 (Tenn. Ct. App. 2005) (citing *Gunter*, 121 S.W.3d at 639), the distinction between a malpractice claim and an ordinary negligence claim was often a subtle one for the courts. In *Graniger v. Methodist Hospital Healthcare Systems, Inc.*, No. 02A01-9309-CV-00201, 1994 WL 496781 (Tenn. Ct. App. Sept. 9, 1994), this Court opined that the distinction between a malpractice claim and an ordinary negligence claim lied in the nature of whether knowledge of medical science was necessary to assess the alleged wrongful conduct. We explained:

> Medical malpractice cases typically involve a medical diagnosis, treatment or other scientific matters. The distinction between ordinary negligence and malpractice turns on whether the acts or omissions complained of involve a matter of medical science or art requiring specialized skills not ordinarily possessed by lay persons or whether the conduct complained of can instead be assessed on the basis of common everyday experience of the trier of fact.

*Id.* at *3 (citing *Pearce v. Feinstein*, 754 F.Supp. 308, 310 (W.D.N.Y. 1990)). Moreover, as our Supreme Court once held, a claim was considered as one for medical malpractice when it alleged "negligent conduct which constitutes or bears a substantial relationship to the rendition of medical treatment by a medical professional." *Gunter*, 121 S.W.3d at 641.

Although drawing the distinction between the two types of claims was originally important to determining whether a plaintiff needed expert proof to support his or her case or to determining whether a particular limitation period applied, it gained even greater relevance in light of new statutory provisions enacted by the General Assembly. Indeed, over the past

decade, Tennessee has experienced a sea-change in the legal landscape pertaining to claims asserted against medical providers. Because a helpful overview of the pertinent changes was recently provided by our Supreme Court's decision in *Ellithorpe v. Weismark*, --- S.W.3d ----, No. M2014-00279-SC-R11-CV, 2015 WL 5853873 (Tenn. Oct. 8, 2015), we reproduce its historical recitation below:

> In 2008, Tennessee's Medical Malpractice Act was amended, introducing new requirements into medical malpractice litigation. *See* Act of April 24, 2008, ch. 919, 2008 Tenn. Pub. Acts 434; *see generally* Rebecca C. Blair, *Med–Mal Obstacles,* 44 Tenn. B.J. 14 (2008). The 2008 amendment required a party initiating a medical malpractice claim to give sixty days' pre-suit notice to the implicated health care providers. *See* Tenn. Code Ann. § 29–26–121(a)(1) (Supp. 2008). Furthermore, the amendment contained a certificate-of-good-faith provision requiring a plaintiff filing a medical malpractice action, in which expert testimony was required, to file a certificate of good faith within ninety days of the filing of the initial complaint. *Id.* § 29–26–122. This certificate served to confirm that one or more experts had been consulted and provided a signed written statement of their belief that there was a good faith basis for filing the complaint. *Id.*

> One year later, in 2009, the Act was again amended to clarify these new requirements. *See* Act of June 4, 2009, ch. 425, 2009 Tenn. Pub. Acts 472; *see generally* John A. Day, *Med Mal Makeover: 2009 Act Improves on '08*, 45 Tenn. B.J. 14 (2009). Tennessee Code Annotated section 29–26–121(a)(1) was amended to require that pre-suit notice only be given to persons or entities named as defendants in the action, *see* Tenn. Code Ann. § 29–26–121(a)(1) (Supp. 2009), and section 121(a)(2) was amended to specify what information was required to be included in the pre-suit notice. *See id.* § 29–26[–]121(a)(2). Additionally, Tennessee Code Annotated section 29–26–122 was amended to require the filing of the certificate of good faith with the complaint instead of within ninety days after its filing. *See id.* § 29–26–122.

> While the 2008 and 2009 amendments to the Tennessee Medical Malpractice Act established new procedural requirements for plaintiffs seeking to file medical malpractice actions, these amendments failed to sufficiently define a medical malpractice claim and left Tennessee courts to distinguish between claims sounding in ordinary negligence and those involving medical malpractice. In January 2011, this Court decided *Estate of French*, which provided a comprehensive and detailed analysis of the interaction between

ordinary negligence principles and the Tennessee Medical Malpractice Act, as then enacted.

In *Estate of French,* the administratrix of the estate of a deceased nursing home resident brought a wrongful death suit against the nursing home alleging claims of ordinary negligence, negligence per se, and violations of the Tennessee Adult Protection Act. 333 S.W.3d at 549. The trial court granted partial summary judgment for the nursing home, holding that the Tennessee Medical Malpractice Act applied to the administratrix's ordinary negligence claims and precluded allegations of negligence per se or violations of the Tennessee Adult Protection Act. *Id.* at 549–50. The Court of Appeals affirmed, holding that "the gravamen of the case sounds in medical malpractice." *Id.* at 553 (internal quotation marks omitted). This Court granted the administratrix's application for permission to appeal to address whether the administratrix's claims were "based upon ordinary common law negligence, medical malpractice, or both." *Id.* at 554.

We explained that, "[b]ecause medical malpractice is a category of negligence, the distinction between medical malpractice and negligence claims is subtle; there is no rigid analytical line separating the two causes of action." *Id.* at 555 (citations omitted). Thus, the Court resolved that "whether claims should be characterized as ordinary negligence or medical malpractice claims obviously depends heavily on the facts of each individual case." *Id.* at 556. However, the Court provided the following guidance in distinguishing between ordinary negligence and medical malpractice:

> [W]hen a claim alleges negligent conduct which constitutes or bears a substantial relationship to the rendition of medical treatment by a medical professional, the medical malpractice statute is applicable. Conversely, when the conduct alleged is not substantially related to the rendition of medical treatment by a medical professional, the medical malpractice statute does not apply.
>
> ....
>
> Medical malpractice cases typically involve a medical diagnosis, treatment or other scientific matters. The distinction between ordinary negligence and malpractice turns on whether the acts or omissions complained of involve a matter of medical

science or art requiring specialized skills not ordinarily possessed by lay persons or whether the conduct complained of can instead be assessed on the basis of common everyday experience of the trier of fact.

*Id*. at 555–56 (alteration in original) (citations omitted); *see also Draper v. Westerfield*, 181 S.W.3d 283, 290 (Tenn. 2005) ("[I]n determining whether an action is for medical malpractice or for common law negligence, the issue is whether the alleged negligent conduct 'bears a substantial relationship to the rendition of medical treatment by a medical professional.' " (citing *Gunter v. Lab. Corp. of Am.*, 121 S.W.3d 636, 641 (Tenn. 2003))). The Court ultimately concluded that it is "the responsibility of the courts to ascertain the nature and substance of a claim" and that the "designation given those claims by either the plaintiff or the defendant is not determinative." *Estate of French*, 333 S.W.3d at 557.

However, roughly four months after this Court's decision in *Estate of French*, at its next session, the Legislature passed the Tennessee Civil Justice Act of 2011, further amending the Tennessee Medical Malpractice Act. *See* Tennessee Civil Justice Act of 2011, ch. 510, 2011 Tenn. Pub Acts 1505 (codified at Tenn. Code Ann. 29–26–101 et seq. (Supp. 2011)). Notably, the Tennessee Civil Justice Act of 2011 amended the existing Tennessee Medical Malpractice Act by removing all references to "medical malpractice" from the Tennessee Code and replacing them with "health care liability" or "health care liability action" as applicable. *See id.* Furthermore, section 29–26–101 was added to the Code which defined "health care liability action" as "any civil action, including claims against the state or a political subdivision thereof, alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, *regardless of the theory of liability on which the action is based.*" Tenn. Code Ann. 29–26–101(a)(1) (Supp. 2011) (emphasis added). This same section went on to provide that "[a]ny such civil action or claim is subject to the provisions of this part regardless of any other claims, causes of action, or theories of liability alleged in the complaint." *Id.* § 29–26–101(c).

*Ellithorpe*, 2015 WL 5853873, at \*4-6 (internal footnote omitted).

*Significance of the 2011 Amendments*

Squarely at issue in this case is the effect of the recent amendments that were discussed in *Ellithorpe*.[5] According to our Supreme Court's decision in that case, the Tennessee Civil Justice Act of 2011 statutorily abrogated the "'nuanced' approach for distinguishing ordinary negligence and health care liability claims as outlined in *Estate of French*." *Id.* at *7. The significance of this holding must be understood within its context. In *Ellithorpe*, parents Adam and Ashley Ellithorpe filed suit against licensed social worker Janet Weismark and alleged that she had provided counseling services to their minor child without their consent. *Id.* at *1. The Ellithorpes' child had allegedly been in the temporary custody of her great aunt and uncle pursuant to a juvenile court order, but according to the parents' complaint, the juvenile court's order gave them the right to remain abreast of, and participate in, counseling regarding the child. *Id.* The parents alleged that when Ms. Weismark completed an intake form to begin counseling with the minor child, she knew the child's great aunt was not a biological parent because "great aunt" was specifically listed on the intake form. *Id.* at *2. The complaint asserted claims for negligence, negligence per se, and intentional infliction of emotional distress, and it contained "numerous allegations that Ms. Weismark deviated from the standard of care . . . in providing counseling services" to the child. *Id.* at *1, 8. When Ms. Weismark answered the parents' complaint, she asserted a number of affirmative defenses. Among other things, Ms. Weismark claimed that the parents had failed to comply with the pre-suit notice and certificate of good faith requirements of the Tennessee Health Care Liability Act ("THCLA"). *Id.* at *3. Although Ms. Weismark later filed a motion to dismiss based on this failure, the parents responded by asserting that their claims were not subject to the THCLA's procedural requirements. *Id.* They contended that because their claims sounded in ordinary negligence, the THCLA did not apply. *Id.* The parents' argument did not survive the trial court's scrutiny, and all claims were dismissed with prejudice. *Id.* According to the trial court, the parents' claims fit within the broad parameters of the THCLA. *Id.*

When the parents appealed to this Court, we vacated the trial court's order and remanded for reconsideration of the complaint pursuant to the standard articulated in *Estate of French*. We held that the trial court appeared to have dismissed the complaint on the basis of the "gravamen" of what was asserted. *Ellithorpe v. Weismark*, No. M2014-00279-COA-R3-CV, 2014 WL 5511773, at *10 (Tenn. Ct. App. Oct. 31, 2014). We were of the opinion

---

[5] We note that from a technical perspective, the effect of a 2012 legislative enactment is also at issue. Although the Code Commission was requested to delete references to "medical malpractice" and substitute instead the term "health care liability" as part of the Tennessee Civil Justice Act of 2011, *see* 2011 Tenn. Pub. Acts Ch. 510, section 9, the General Assembly directly amended the Tennessee Medical Malpractice Act to replace "medical malpractice" with "health care liability" in every section in 2012. *See* 2012 Tenn. Pub. Acts Ch. 798. At that point, the Tennessee Medical Malpractice Act became known as the Tennessee Health Care Liability Act. *Coggins v. Holston Valley Med. Ctr.*, No. E2014-00594-COA-R3-CV, 2015 WL 3657778, at *5 (Tenn. Ct. App. June 15, 2015) (citations omitted), *perm. app. denied* (Tenn. Oct. 15, 2015).

that, "upon remand, the trial court should consider the factors outlined in *Estate of French* to determine which claims sound[ed] in ordinary negligence or IIED and which claims f[e]ll within the purview of the THCLA." *Id.* Upon further appeal to the Tennessee Supreme Court, however, this Court's holding in *Weismark* was reversed. The Supreme Court concluded that the "nuanced" approach from *Estate of French* was abrogated in light of the definitions contained within Tennessee Code Annotated section 29-26-101. *Ellithorpe*, 2015 WL 5853873, at *7. As it explained:

> Giving every word in this section its full effect and plain meaning, we hold that section 29-26-101 establishes a clear legislative intent that *all* civil actions alleging that a covered health care provider or providers have caused an injury related to the provision of, or failure to provide health care services be subject to the pre-suit notice and certificate of good faith requirements, regardless of any other claims, causes of action, or theories of liability alleged in the complaint.

*Id.*

What we glean from *Ellithorpe* is the primacy of the recent statutory amendments to the THCLA, formerly known as the Tennessee Medical Malpractice Act. The "nuanced" approach for distinguishing an ordinary negligence claim from a medical malpractice claim has been displaced because the statute now contains a comprehensive definition of what constitutes a "health care liability action." Indeed, because this definitional meaning controls whether a claim falls within the aegis of the THCLA, the *Estate of French* analysis is, to quote our Supreme Court, "effectively moot." *Id.* The THCLA's definition of a "health care liability" action is conclusive, *see Igou v. Vanderbilt Univ.*, No. M2013-02837-COA-R3-CV, 2015 WL 1517794, at *5 n.6 (Tenn. Ct. App. Mar. 27, 2015), *no perm. app. filed*, and courts do not need to conduct an *Estate of French* analysis to see whether the framework of the statute applies. A claim will be subject to the THCLA if the facts of the case show that it qualifies as a "health care liability action" as that term is statutorily defined. *See Estate of Thibodeau v. St. Thomas Hosp.*, No. M2014-02030-COA-R3-CV, 2015 WL 6561223, at *6 (Tenn. Ct. App. Oct. 29, 2015), *perm. app. filed*.

As was discussed in *Ellithorpe*, the General Assembly has defined a "health care liability action" as follows:

> [A]ny civil action, including claims against the state or a political subdivision thereof, alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability on which the action is based[.]

Tenn. Code Ann. § 29-26-101(a)(1) (2012). Under the statute, a "health care provider" includes the employee of a health care provider, such as a physician, nurse, or technician, and the meaning of "health care services" includes "staffing, custodial or basic care, positioning, hydration and similar patient services." Tenn. Code Ann. § 29-26-101(a)(2), (b) (2012). Given the breadth of the statute, it should not be surprising if most claims now arising within a medical setting constitute health care liability actions.[6] This is a noteworthy development within the law inasmuch as health care liability claims are subject to the strictures outlined in the THCLA. *See* Tenn. Code Ann. § 29-26-101(c) (2012) ("Any such civil action or claim is subject to this part[.]").

Indeed, the consequences of falling within the ambit of the THCLA are significant. Not only is a health care liability action subject to the pre-suit notice requirement contained in Tennessee Code Annotated section 29-26-121, but potentially, it is subject to the certificate of good faith requirement in section 29-26-122, as well as the expert proof requirement in section 29-26-115. That these latter two requirements are subject to qualification is an important point that should not be ignored. This remains especially true in light of the facts implicated in this case.

On its face, section 29-26-115 broadly imposes a requirement that health care liability actions be proven by expert testimony. Specifically, it provides as follows:

(a) In a health care liability action, the claimant shall have the burden of proving by evidence as provided by subsection (b):

(1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;

(2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and

(3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

(b) No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the

---

[6] Of course, as should be clear, whether a health care liability action is implicated is entirely dependent on whether the factual allegations meet the definition outlined in the statute.

- 12 -

facts required to be established by subsection (a), unless the person was licensed to practice in the state or a contiguous bordering state a profession or specialty which would make the person's expert testimony relevant to the issues in the case and had practiced this profession or specialty in one (1) of these states during the year preceding the date that the alleged injury or wrongful act occurred. This rule shall apply to expert witnesses testifying for the defendant as rebuttal witnesses. The court may waive this subsection (b) when it determines that the appropriate witnesses otherwise would not be available.

(c)     In a health care liability action as described in subsection (a), there shall be no presumption of negligence on the part of the defendant; provided, that there shall be a rebuttable presumption that the defendant was negligent where it is shown by the proof that the instrumentality causing injury was in the defendant's (or defendants') exclusive control and that the accident or injury was one which ordinarily doesn't occur in the absence of negligence.

(d)     In a health care liability action as described in subsection (a), the jury shall be instructed that the claimant has the burden of proving, by a preponderance of the evidence, the negligence of the defendant. The jury shall be further instructed that injury alone does not raise a presumption of the defendant's negligence.

Tenn. Code Ann. § 29-26-115 (2012).

Notwithstanding the general requirement that an action filed under the THCLA be supported by expert proof, it is not absolute. As our Supreme Court acknowledged in *Ellithorpe*, expert proof is not required in a health care liability action where the claim "falls within the 'common knowledge' exception." *Ellithorpe*, 2015 WL 5853873, at *8. Reviewing the case law in Tennessee reveals that the "common knowledge" language has been referred to in two contexts regarding claims asserted against medical providers. First, expert proof may be dispensed with when the trier of fact can determine, based on common knowledge, that the direct allegations against a defendant constitute negligence. *See, e.g.*, *Rural Ed. Ass'n v. Anderson*, 261 S.W.2d 151, 155 (Tenn. Ct. App. 1953) ("It is a matter of common knowledge and common sense of laymen that a patient in such a condition should be watched and protected and not left unattended on an upper story by an unguarded window through which he might, and ultimately did, fall or jump to his death."). When courts use the "common knowledge" language in this sense, they are directly referencing the "common knowledge" exception. We note, however, that the "common knowledge" language has also

- 13 -

been referred to in cases involving the application of *res ipsa loquitur*, which "allows an inference of negligence where the jury has a common knowledge or understanding that events which resulted in the plaintiff's injury do not ordinarily occur unless someone was negligent." *Seavers v. Methodist Med. Ctr. of Oak Ridge*, 9 S.W.3d 86, 91 (Tenn. 1999) (citations omitted). A *res ipsa loquitur* instruction is often necessary in cases where "direct evidence of a defendant's negligence is either inaccessible to or unknown by the plaintiff." *Id.* (citations omitted). Under the traditional articulation of the doctrine of *res ipsa loquitur*, which is now codified at Tennessee Code Annotated section 29-26-115(c), "there was considerable overlap with the common knowledge exception, inasmuch as the *res ipsa loquitur* requirement that the injury be one which ordinarily does not occur in the absence of negligence was often phrased in terms of 'common experience' or 'ordinary experience.'" *Deuel v. Surgical Clinic, PLLC*, No. M2009-01551-COA-R3-CV, 2010 WL 3237297, at *11 (Tenn. Ct. App. Aug. 16, 2010) (citations omitted). Once, this Court went so far as to liken *res ipsa loquitur* and the common knowledge exception as "Siamese twins." *Murphy v. Schwartz*, 739 S.W.2d 777, 778 (Tenn. Ct. App. 1986). Notwithstanding the differences in context in which the common knowledge language has been discussed, one salient point emerges as it concerns expert proof and the application of the "common knowledge" exception itself: expert testimony is not required where the act of alleged wrongful conduct lies within the common knowledge of a layperson. *See Baldwin v. Knight*, 569 S.W.2d 450, 456 (Tenn. 1978); *Bowman v. Henard*, 547 S.W.2d 527, 530-31 (Tenn. 1977); *Tucker v. Metro. Gov't of Nashville & Davidson Cnty.*, 686 S.W.2d 87, 92 (Tenn. Ct. App. 1984).[7]

Given this understanding, a determination that a claim falls within the THCLA does not automatically trigger all of the statute's requirements. The need for expert proof will not lie if the matter is within the common knowledge of a layperson, and if there is no need for expert proof, a plaintiff's complaint will not fail for failure to attach a certificate of good faith under section 29-26-122. *See* Tenn. Code Ann. § 29-26-122(a) (2012) ("In any health care liability action *in which expert testimony is required* by § 29-26-115, the plaintiff or plaintiff's counsel shall file a certificate of good faith with the complaint.") (emphasis added). Thus, although determining that a claim constitutes a health care liability action will

---

[7] Although courts previously discussed the common knowledge exception as applying only in "'exceptional cases,'" *Tucker*, 686 S.W.2d at 92 (quoting *German v. Nichopoulos*, 577 S.W.2d 197 (Tenn. Ct. App. 1978)), we note that section 29-26-115 now applies to health care liability actions, which seemingly encompass a larger class of claims than those that simply assert medical malpractice. Additionally, we note that although the common knowledge exception has primarily been referenced to supplant the need for an expert in *negligence* cases, it does not appear to be so strictly limited. We note that the essence of the concept has previously been referred to in a case involving the assertion of a claim for medical battery. *See Bates v. Metcalf*, No. E2001-00358-COA-R3-CV, 2001 WL 1538535, at *10 (Tenn. Ct. App. Dec. 3, 2001) ("We agree that expert testimony . . . is unnecessary to sustain a cause of action for medical battery because whether the patient was aware that the doctor was going to perform the procedure in question and whether the patient consented to such procedure are within the common knowledge of a lay witness.").

subject it to the pre-suit notice requirement in section 29-26-121, additional analysis is needed to determine whether expert proof is necessary. *See Smith v. Testerman*, No. E2014-00956-COA-R9-CV, 2015 WL 1118009, at *5 (Tenn. Ct. App. Mar. 10, 2015), *perm. app. denied* (Tenn. June 15, 2015).

*Review of the Trial Court's Ruling on Summary Judgment*

Previously, we noted that an analysis of the trial court's actions could be guided by two questions: (1) whether the claims asserted within Mrs. Osunde's complaint are cognizable outside the context of a "health care liability action," and (2) assuming that our answer to the first question is in the negative, whether Mrs. Osunde's allegations can nevertheless be supported in the absence of expert proof.

Applicability of the THCLA

The first question requires us to examine whether Mrs. Osunde's asserted claims constitute a health care liability action as that term is statutorily defined in Tennessee Code Annotated section 29-26-101. As we previously indicated, such an action includes "any civil action . . . alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability on which the action is based[.]" Tenn. Code Ann. § 29-26-101(a)(1) (2012). In this case, although Mrs. Osunde originally asserted a claim for medical malpractice in addition to a claim for common law negligence, she later clarified that she only sought to recover on her common law negligence claim. According to her, it had become apparent through discovery that her claim sounded only in ordinary negligence, and during oral argument on appeal, her counsel stressed that the only negligence she was alleging was on account of the radiology technician's providing a faulty stool. Although Mrs. Osunde's counsel has argued that the facts surrounding this asserted negligence claim do not give rise to a health care liability action, we must respectfully disagree. The asserted conduct on which Mrs. Osunde bases her recovery fits within the definition of a health care liability action stated in section 29-26-101. Again, such an action alleges that a health care provider "caused an injury related to the provision of, or failure to provide, health care services." *Id.* Here, Mrs. Osunde has alleged that the radiology technician caused an injury to her when he provided her with a faulty stool in connection with an x-ray taken at DMC's hospital. Under the statute, the radiology technician qualifies as a "health care provider" because that term includes the employees of health care providers such as "physicians, nurses, licensed practical nurses, advance practice nurses, physician assistants, nursing technicians, pharmacy technicians, orderlies, certified nursing assistants, [and] technicians[.]" *Id.* § 29-26-101(a)(2)(D). Moreover, the provision of the stool in connection with the x-ray qualifies as a "health care service" because such services include "staffing, custodial or basic

- 15 -

care, positioning, hydration and similar patient services." *Id.* § 29-26-101 (b). Measuring the facts asserted by Mrs. Osunde against the backdrop of the definitions contained within the statute, it is inescapable that she has alleged that a "health care provider" has injured her in relation to its provision of "health care services." As such, her action is subject to the THCLA.

Given our conclusion on this issue, we agree with DMC that the trial court erred, from a definitional perspective, in how it treated the asserted common law negligence claim as somehow separate from the THCLA. As previously noted, the trial court allowed Mrs. Osunde's common law negligence claim to proceed to trial, while simultaneously dismissing her "health care liability action" as a matter of law. This result is incongruous. Indeed, at the time of summary judgment, Mrs. Osunde was pursuing a legal theory that qualified as a health care liability action. Inasmuch as the trial court purported to dismiss Mrs. Osunde's "health care liability action" but allowed allegations that constituted a claim under the THCLA to survive, the trial court's order is devoid of definitional clarity. Of course, our determination that Mrs. Osunde's denominated common law negligence theory constitutes a health care liability action does not *ipso facto* mean that it should have been dismissed on account of her failure to identify an expert. As we have discussed, whether her allegations of negligence should have been dismissed for lack of an expert is a question separate and apart from whether they give rise to a claim under the THCLA.

Need for Expert Proof

In order to reverse the trial court's disposition of this case and hold that Mrs. Osunde's allegations should not go to trial, we would be required to come to the conclusion that expert proof is necessary in order to support her case-in-chief. In light of the allegations of negligence that are involved in this case, this is something that we cannot do. As we have previously explained, expert proof is not required "where the alleged acts of negligence are so obvious that they come within the common knowledge of laymen." *Kennedy v. Holder*, 1 S.W.3d 670, 672 (Tenn. Ct. App. 1999), *overruled on other grounds*. In this case, as clarified in her response to DMC's summary judgment motion and in her argument on appeal, Mrs. Osunde is asserting that negligence was committed through the radiology technician's provision of a faulty, uneven stool.[8] She testified in her deposition that when she attempted to step off the stool provided to her, the weight of the stool shifted from under her. As Mrs. Osunde's counsel has submitted, this is simply a case of a "wobbly stool." It is within the common knowledge of a layperson to determine whether the provision of an

---

[8] At oral argument, Mrs. Osunde's counsel specifically disclaimed any other basis for establishing negligence.

- 16 -

unstable stool is negligent.[9] An expert is not needed to aid in the understanding of this issue, and as such, the trial court did not err in allowing Mrs. Osunde's case to go to trial.

## Conclusion

In this case, the trial court's order adjudicating DMC's motion for summary judgment is devoid of clarity in light of the definitions contained within the THCLA. Although DMC is correct in its assertion that Mrs. Osunde's allegations of negligence give rise to a health care liability action, this determination does not compel a dismissal of Mrs. Osunde's case. The allegations of negligence pursued by Mrs. Osunde give rise to a health care liability action pursuant to the THCLA, but under the facts of this case, expert proof is not required to support them. For these reasons, the trial court's ultimate disposition is not in error. We only modify the trial court's summary judgment order to the extent that its analysis does not comport with the definitional framework contained herein. Specifically, we reverse the trial court's order to the extent that it purports to dismiss Mrs. Osunde's health care liability action. This cause is remanded to the trial court for such further proceedings as are necessary to adjudicate Mrs. Osunde's health care liability action as to her ordinary negligence claim, as well as her husband's claim for loss of consortium. The costs of this appeal are assessed against the Appellant, DMC-Memphis, Inc., and its surety, for which execution may issue if necessary.

_____
ARNOLD B. GOLDIN, JUDGE

---

[9] In certain cases, if not most cases, the challenge to the use of a particular piece of equipment within the medical setting, such as a stool or other support system, will require medical expert proof. In her deposition, Mrs. Osunde asserted that the stool provided to her was not the "correct stool." She claimed that there were standard stools that should be used in health care facilities. Generally speaking, inquiry into this type of decision would require the assistance of expert proof. It is not ordinarily within common knowledge what is appropriate for medical treatment. With that said, although Mrs. Osunde has challenged the type of stool with which she was provided, the resolution of the negligence question here does not require medical judgment. The essence of Mrs. Osunde's grievance is that the specific stool with which she was provided was wobbly and unstable. Inasmuch as her challenge is to the technician's provision of a stool that was inherently faulty, the question is not one of medical soundness but rather, is one of common knowledge. That a stool should promote stability is not in question, and it is within the common knowledge of a layperson to determine whether providing a wobbly stool is negligent. Thus, it matters not in this case that Mrs. Osunde takes issue with the specific type of stool that was used. According to her allegations and deposition testimony, the stool is fundamentally defective and unstable. Again, whether the provision of such a stool constitutes negligence is within the common knowledge of a jury. With respect to the stool, we note that there appears to be a dispute of fact as to whether a single stool was used. Whereas Mrs. Osunde's allegations implicate the presence of a single, unstable wooden stool, the radiology technician testified in his deposition that he pushed together two metal stools to allow Mrs. Osunde to stand. According to the technician, each stool had a rail on one side. Whether Mrs. Osunde's factual allegations are true is certainly a matter of proof for trial.