# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### February 12, 2020 Session

## JOSH CATHEY v. WILLIAM BEYER ET AL.

**Appeal from the Circuit Court for Madison County**
**No. C-19-104          Roy B. Morgan, Jr., Judge**

_____

**No. W2019-01603-COA-R3-CV – Filed April 24, 2020**
_____

This is a health care liability case. Appellant brought a *pro se* action against two licensed counselors alleging injuries arising from the altering and concealment of counseling records of Appellant's minor children. The trial court dismissed the complaint, under Tennessee Rule Civil Procedure 12.02, for failure to comply with the pre-suit notice and certificate of good faith requirements of the Tennessee Health Care Liability Act. Tenn. Code Ann. §§ 29-26-121, 122. We conclude that Appellant's claims relate to the provision of health care services and are subject to the procedural requirements in Tennessee Code Annotated § 29-26-101 *et seq.* Therefore, we affirm the trial court's dismissal of Appellant's complaint.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and CARMA DENNIS MCGEE, J., joined.

Joshua D. Cathey, Jackson, Tennessee, appellant, *pro se*.

James E. Looper and Nathaniel T. Gorman, Nashville, Tennessee, for the appellees, William Beyer and Nancy Plunk.

## OPINION

### I. Background

Appellant Joshua Cathey is the father of two minor children. He and the children's mother, Tasha Escue, were never married. Unknown to Mr. Cathey, on January 3, 2018, Ms. Escue took the children to counseling at Beyer Psychology Group where they were

seen by Appellee William Beyer, a licensed senior psychological examiner-health service provider and licensed professional counselor. Mr. Beyer performed an initial psychological evaluation of the children. Then, from February 2018 until April 2, 2018, Appellee Nancy Plunk (together with Mr. Beyer, "Appellees"), a licensed professional counselor, provided counseling services to the minor children. In April 2018, Mr. Cathey learned of the counseling services and contacted Beyer Psychology Group seeking the children's records; Appellees provided Mr. Cathey with copies of those records.

On May 18, 2018, Ms. Escue filed a petition to modify custody. In support of her petition, Ms. Escue relied in part on the testimony and records of Ms. Plunk and Mr. Beyer. In his answer, Mr. Cathey stated that he had retained Dr. John V. Ciocca, Ph.D., who reviewed Mr. Beyer and Ms. Plunk's notes and opined that the APA [i.e., Academic Pediatric Association] guidelines were not followed in relation to Appellees' treatment of the children. In October 2018, Mr. Cathey subpoenaed Ms. Escue to provide all the evidence on which she would rely in the custody matter. Mr. Cathey alleges that the documents he received from Ms. Escue were not identical to the records he received from Appellees. Thus, he contends that Appellees falsified the records they tendered to him.

On April 8, 2019, Mr. Cathey, acting *pro se*, filed a complaint against Nancy Plunk and William Beyer, alleging that Ms. Plunk and Mr. Beyer falsified and concealed the counseling records of Mr. Cathey's children. Specifically, Mr. Cathey's complaint includes claims of: (1) falsifying healthcare records; (2) fraudulent concealment; (3) spoliation of evidence; (4) defamation of character; and (5) intentional infliction of emotional distress.

In response to Mr. Cathey's complaint, Appellees filed a motion to dismiss or, in the alternative, for summary judgment. Appellees asserted that Mr. Cathey's causes of action sounded in health care liability and were, thus, subject to the procedural requirements of the Tennessee Health Care Liability Act ("THCLA"). Tenn. Code Ann. § 29-26-101 *et seq*. Mr. Cathey filed a response to Appellees' motion. Although Mr. Cathey conceded that Appellees were health care providers, he maintained that his claims were not health care liability claims.

On July 8, 2019, the trial court held a hearing on Appellees' motion. By order of August 7, 2019, the trial court granted Appellees' motion to dismiss pursuant to Tennessee Rule of Civil Procedure 12.02. The trial court found that Mr. Cathey's claims were "health care liability claims within the meaning of the THCLA and are subject to its requirements." Furthermore, the trial court found that expert testimony was required to establish Mr. Cathey's claims. Because Mr. Cathey failed to file pre-suit notice and a certificate of good faith with his complaint, the trial court dismissed all of Mr. Cathey's claims with prejudice pursuant to Tennessee Code Annotated section 29-26-122. Mr. Cathey appeals.

**II. Issues**

Appellant raises two issues, which we restate as follows:

1. Whether trial court erred in concluding that all of Appellant's claims sounded in health care liability?

2. If not, whether the trial court erred in dismissing Appellant's complaint based on his failure to comply with the procedural requirements of the THCLA?

## III. Standard of Review

A motion to dismiss for failure to state a claim is the proper method for challenging whether a plaintiff has complied with the THCLA's pre-suit notice and certificate of good faith requirements. *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 307 (Tenn. 2012). A motion to dismiss based upon Tennessee Rule of Civil Procedure 12.02 challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence. *Phillips v. Montgomery Cnty.*, 442 S.W.3d 233, 237 (Tenn. 2014) (quoting *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011)).

A defendant filing a motion to dismiss "admits the truth of all the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action." *Id.* (quoting *Webb*, 346 S.W.3d at 426) (internal citations omitted). The resolution of such motion is determined by examining the pleadings alone. *Id.* In adjudicating such motions, courts "must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences." *Id.* (citing *Webb*, 346 S.W.3d at 426; *Cullum v. McCool*, 432 S.W.3d 829, 832 (Tenn. 2013)). A motion to dismiss should be granted only if it appears that "'the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.'" *Webb*, 346 S.W.3d at 426 (quoting *Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 857 (Tenn. 2002)). We review a lower court's decision on such a motion *de novo* without any presumption of correctness. *Ellithorpe v. Weismark*, 479 S.W.3d 818, 823-24 (Tenn. 2015) (citing *Phillips*, 442 S.W.3d at 237).

Furthermore, we recognize that Mr. Cathey is representing himself on appeal as he did in the trial court. Parties who decide to represent themselves are entitled to equal treatment by the court. *Murray v. Miracle*, 457 S.W.3d 399, 402 (Tenn. Ct. App. 2014). The court should take into account that many *pro se* litigants have no legal training and little familiarity with the judicial system. *Id.* However, the court must also be mindful of the boundary between fairness to the *pro se* litigant and unfairness to the *pro se* litigant's adversary. *Id.* While the court should give *pro se* litigants, who are untrained in the law, a certain amount of leeway in drafting their pleadings and briefs, it must not excuse *pro se*

litigants from complying with the same substantive and procedural rules that represented parties are expected to observe. *Lacy v. Mitchell*, No. M2016-00677-COA-R3-CV, 2016 WL 6996366, at *2 (Tenn. Ct. App. Nov. 30, 2016), *perm. app. denied* (Tenn. Feb. 24, 2017) (citing *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003)).

## IV. Analysis

### A. Health Care Liability Action

A claim is subject to the THCLA if the facts show that it qualifies as a "health care liability action" as that term is statutorily defined. *Osunde v. Delta Medical Ctr.*, 505 S.W.3d 875, 884 (Tenn. Ct. App. 2016) (citation omitted). A health care liability action is defined as "any civil action . . . alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, **regardless of the theory of liability on which the action is based**." Tenn. Code Ann. § 29-26-101(a)(1) (emphasis added). This Court has noted that "[g]iven the breadth of the statute, it should not be surprising if most claims now arising within a medical setting constitute health care liability actions." *Osunde*, 505 S.W.3d at 884-85. However, "whether a health care liability action is implicated is entirely dependent on whether the factual allegations meet the definition outlined in the statute." *Id.* at n.6.

From the allegations, the first two elements are not in dispute: this lawsuit is a civil action, and Appellees are health care providers.[1] The issue here is whether the injuries alleged by Mr. Cathey are "related to the provision, or failure to provide, health care services to a person." Tenn. Code Ann. § 29-26-101(a)(1). To determine whether a defendant "caused an injury **related to** the provision, or failure to provide, health care services," we focus on whether the alleged conduct that caused the injury involved the provision, or failure to provide, health care services. *See C.D. v. Keystone Continuum, LLC*, No. E2016-02528-COA-R3-CV, 2018 WL 503536, at *5 (Tenn. Ct. App. Jan. 22, 2018) (quoting Tenn. Code Ann. § 29-26-101(a)(1)). Tennessee Code Annotated section 29-26-101(b) defines a "health care service" as "care by health care providers [. . .] and also includes staffing, custodial or basic care, positioning, hydration and similar patient services."

As discussed above, Appellant asserts claims against Ms. Plunk and Mr. Beyer for: (1) falsifying health care records; (2) fraudulent concealment; (3) spoliation of evidence; (4) defamation of character; and (5) intentional infliction of emotional distress.

---

[1] This is a fact that Mr. Cathey conceded in his complaint where he stated that Mr. Beyer is a "professional licensed senior psychological examiner" and "licensed professional counselor," and Ms. Plunk is a "licensed professional counselor, mental health service provider, and certified clinical trauma professional." As such, Appellees are licensed to provide health care services pursuant to chapter 63. *See* Tenn. Code Ann. § 29-26-101 (defining "health care provider" as "[a] health care practitioner licensed, authorized, certified, registered, or regulated under any chapter of title 63 or title 68[.]").

- 4 -

Importantly, all claims arise out of the same set of facts. As stated in Mr. Cathey's complaint:

12. Ms. Plunk and Mr. Beyer both stated that they had provided Mr. Cathey with the only records of the minor children they were permitted to, as every other record in their possession was allegedly confidential or privileged. []

13. On May 18, 2018, Ms. Escue, through counsel filed a Motion to Modify Custody of the minor children versus Mr. Cathey in the Juvenile Court of Madison County. Said Motion's evidentiary foundation was the minor children's secret meetings and circumstances with Mr. Beyer and Ms. Plunk.

14. Mr. Cathey soon retained the services of a rebuttal forensic psychology expert, Dr. John V. Ciocca, PHD ("Dr. Ciocca"). Dr. Ciocca reviewed Mr. Beyer's typewritten psychological evaluation reports and Ms. Plunk's notes of the minor children. Dr. Ciocca has also interviewed the minor children about the series of secret visits at Beyer Psychology Group. During one of the sessions with Dr. Ciocca he interviewed the children about alleged transcribed questions and answers within Mr. Beyer's reports, in which the minor children stated to him, "Mr. William and Ms. Nancy only wanted us to talk about bad things about our dad, but we didn't tell them all those things in the papers."

15. Dr. Ciocca stated that the APA guidelines were not followed at Beyer Psychology Group and the conduction [sic] of their sessions was in a very unorthodox manner. In addition, Dr. Ciocca expressed concerns in how Mr. Beyer was able to perform various testing and collect so much data from three different people in just a single half of day session.

16. In October of 2018, Mr. Cathey, though counsel, sent discovery to Ms. Escue requesting her to produce all of the relevant evidence she would proffer to the court versus Mr. Cathey at her Motion to Modify Custody hearing. Ms. Escue produced numerous copies of Mr. Beyer's and Ms. Plunk's documents, statements, notes, reports, evaluations, and records of the minor children. In addition, Ms. Escue stated Mr. Beyer and Ms. Plunk would testify as her expert witnesses to their records.

17. While examining Ms. Escue's copy of Ms. Plunk's records, Mr. Cathey discovered that Ms. Plunk had provided Ms. Escue with a substantially altered version of her handwritten records. [] The minor children's health records should have been identical to the ones Ms. Plunk gave to Mr. Cathey in April, they are not.

18. Mr. Cathey, through counsel, immediately issued subpoenas to Mr. Beyer and Ms. Plunk. Mr. Cathey requested, once again, the defendants to produce all of his minor children's entire health records, documents, and also any email communications with Ms. Escue.

19. In November of 2018, Mr. Cathey and his counsel received Mr. Beyer and Ms. Plunk's answers to the subpoenas. Said answers included printouts

of an exchange of email communications between Mr. Beyer and Ms. Plunk to and from Ms. Escue. [] In addition, before any litigation began, Ms. Plunk was also communicating with Ms. Escue's attorney seeking advice on "doing everything appropriately." [] Finally, the email communications clearly show Mr. Beyer falsified and concealed from Mr. Cathey many versions of the minor children's typewritten psychological evaluation reports. []

20. In addition, it is evident that Mr. Beyer affirmatively prompted Ms. Escue to suggest her own alterations to the minor children's psychological evaluation reports before he released them to her attorney. "Here are the edited reports, Let me know if you want me to forward a copy to Lanis." "I think these are all of the corrections needed in terms *of content*" "I will email you the *edited* copy."

21. A review of the typewritten psychological evaluation reports that Mr. Beyer provided to Mr. Cathey substantiate that numerous non-transparent falsifying of content were carried out and concealed by Mr. Beyer. It is important to note that [o]n October 22, 2018, Ms. Escue, in sworn deposition, stated that she was not in the room, nor could she hear the interviews conducted to the minor children by Mr. Beyer.

22. In answering the November 7, 2018 subpoena, Ms. Plunk produced non-confidential and non-privileged documents of the minor children that either existed on, before, or she created after Mr. Cathey's April 13, 2018 request of her records. In addition Ms. Plunk concealed two of the minor children's documents in her answer to the subpoena. []

23. The malicious and intentional actions of the Beyer Psychology Group and its members/group including but not limited to Mr. William Beyer and Ms. Nancy Plunk caused damages to Mr. Cathey that are actionable under Tennessee State Law in which relief can be granted.

Presuming all factual allegations are true and giving Mr. Cathey the benefit of all reasonable inferences, as we must do when reviewing the trial court's grant of a Tennessee Rule of Civil Procedure 12 motion, all of Mr. Cathey's claims originate from Appellees' reportedly fraudulent creation and/or alteration of the children's counseling records. Specifically, Mr. Cathey alleged that the records showed that Appellees "intentionally falsified" some if not all of the healthcare records of the minor children, and Appellees concealed the falsifications "by failing to use transparent healthcare editing techniques." In addition, Mr. Cathey alleged that Appellees "inserted false statements" that related to the "physical, emotional, and mental harm and/or abuse of the minor children by Mr. Cathey." Mr. Cathey asserted that Appellees' actions caused him emotional distress because the "records would be read and relied upon by the Court and the Guardian ad litem at the Motion to Modify Custody hearing."

In support of his contention that his claims do not sound in health care liability, Mr. Cathey argues that the injuries resulting from Appellees' alteration of the children's records

arose **after** the completion of Appellees' health care services (*i.e.*, during the custody case). Therefore, he maintains that his claims are not sufficiently related to the underlying counseling services so as to qualify as a health care liability action. We disagree.

The "[d]ocumentation of medical diagnostic and treatment services is an essential part of modern health care." 87 Am. Jur. 3d *Proof of Facts* § 2. Documents or notes created during the course of counseling services may include, but are not limited to, demographic or administrative information, client's statements, professional observations, progress notes, assessments, evaluations, and treatment plans. *See id.* The resulting contents of these records are generated as a direct consequence of the counseling services and constitute an important aspect of a patient's care. While documentation may occur outside the presence of a patient, we note that a "health care service" as defined in Tennessee Code Annotated section 29-26-101(b) is not limited to conduct that occurs in the presence of a specific person, *i.e.* a patient, or in a specific location, *i.e.* a health care facility. *See* Tenn. Code Ann. § 29-26-101(b). For example, in ***Ellithorpe v. Weismark***, parents alleged they suffered emotional distress after a licensed, clinical social worker provided counseling to their child without their consent, involvement, or knowledge. 479 S.W.3d 818, 820-22 (Tenn. 2015). The Tennessee Supreme Court held that the parents' negligence claims fell under the THCLA, reasoning that the complaint alleged an injury related to the provision of health care services. *Id.* at 828.

As illustrated in ***Ellithorpe***, an injury from a health care provider must only be "**related to** the provision of, or failure to provide health care services to a person" in order to qualify as a health care liability action under the THCLA. Tenn. Code Ann. § 29-26-101(a)(1) (emphasis added). "[W]hile the precise location of the analytical lines that separates THCLA claims from non-THCLA claims is sometimes unclear, our task is only to determine on which side of the line [Appellant's] claims fall." ***Lacy v. Vanderbilt Univ. Med, Ctr.***, No. M2016-02014-COA-R3-CV, 2017 WL 6273316, at *7 (Tenn. Ct. App. May 4, 2017). Claims, such as Appellant's, disputing the validity of medical records would require a determination as to whether the disputed records are an accurate representation of the health care services received by the children. As such, the documentation of health care services in this instant case clearly relates to the provision of health care services. Because Mr. Cathey's claims relate to and arise out of the provision of, or failure to provide, health care services to his children, Mr. Cathey's claims constitute a health care liability action.

## B. Procedural Implications

When a claim is determined to fall within the scope of the THCLA, the consequences are significant. ***Osunde***, 505 S.W.3d at 885. A health care liability action is subject to a sixty-day pre-suit notice requirement pursuant to Tennessee Code Annotated section 29-26-121. Failure to file pre-suit notice may result in dismissal without prejudice. *See **Foster v. Chiles***, 467 S.W.3d 911, 916 (Tenn. 2015). Although the pre-suit notice

requirements of Tennessee Code Annotated section 29-26-121 apply to all THCLA actions, the good faith certification requirements of section 29-26-122 apply "*only* to health care liability claims requiring expert testimony." **Estate of Bradley v. Hamilton Cnty.**, No. E2014-02215-COA-R3-CV, 2015 WL 9946266, at \*5 (Tenn. Ct. App. Aug. 21, 2015) (emphasis in original). Generally, in health care liability actions, "expert proof is required to establish the recognized standard of acceptable professional practice in the profession[.]" **Ellithorpe**, 479 S.W.3d at 829. However, "[t]he need for expert proof will not lie if the matter is within the common knowledge of a layperson." **Osunde**, 505 S.W.3d at 887; *see* Tenn. Code Ann. § 29-26-122(a) (2012) ("In any health care liability action in which expert testimony is required by § 29-26-115, the plaintiff or plaintiff's counsel shall file a certificate of good faith with the complaint."). When expert testimony is determined to be required pursuant to Tennessee Code Annotated section 29-26-115, then a plaintiff's failure to file a certificate of good faith results in dismissal **with prejudice**, absent a showing that the failure was not the fault of the claimant or demonstrated "extraordinary cause." Tenn. Code Ann. § 29-26-122(a), (c) (emphasis added).

It is undisputed that Appellant did not send pre-suit notice to Appellees, nor did Appellant attach a certificate of good faith to his complaint. However, Appellant contends that all of his claims are subject to the "common knowledge exception"; as such, he contends that he is not required to file a certificate of good faith with his complaint. In his complaint, Mr. Cathey alleged that Ms. Plunk (1) "intentionally falsified some if not all records of the minor children"; (2) "intentionally concealed her falsifications by intentionally failing to use transparent healthcare editing techniques"; (3) failed to produce authentic copies of her records pursuant to Rule 45.02 of the Tennessee Rules of Civil Procedure; (4) "intentionally fabricated and inserted malicious, false, and defamatory statements about Mr. Cathey into the minor children's records knowing other people would review her records"; and (5) "falsified her records on the minor children" so that "Mr. Cathey experienced emotional distress her records would be read and relied upon by the Court." Similarly, Appellant alleged that Mr. Beyer: (1) "falsified some if not all health care records of the minor children"; (2) "concealed the fact that he intentionally falsified some, if not all, of the minor children's psychological evaluation reports by not using transparent editing techniques such as the proper ~~strikethrough~~ method"; (3)"intentionally, recklessly, and knowingly concealed, falsified, fabricated, and deleted evidence to be relevant during a legal proceeding"; (4) "intentionally fabricated and inserted malicious, false, and defamatory statements about Mr. Cathey into the minor children's records"; and (5) "constructed falsified typewritten psychological evaluation reports on the minor children."

From the allegations in his complaint, it is clear that each of Appellant's claims rests on the contents of his children's counseling records—specifically, the manner in which the records were created, altered, maintained, and/or distributed.[2] In other words, all of Mr.

---

[2] While dismissal must be considered on a claim-by-claim basis, *see* **Lacy v. Mitchell**, No.M2016-

Cathey's claims ostensibly allege that Appellees deviated from the applicable standard of care in maintaining their respective counseling records. Because the creation and maintenance of counseling records is not within the scope of a layman's knowledge, expert proof would be required to establish that Appellant's injuries resulted from Appellees' failure to adhere to the applicable standard of acceptable professional practice vis-à-vis the children's records. Indeed, the need for expert testimony is acknowledged in Appellant's complaint wherein he states that he retained forensic psychologist, Dr. John V. Ciocca, Ph.D., to establish that "the APA guidelines were not followed at Beyer Psychology Group[,] . . . [and] the conduction [sic] of their sessions was in a very unorthodox manner." Because expert proof was required to establish that Appellees failed to follow the APA guidelines in their treatment, Appellant was required to file a certificate of good faith in compliance with Tennessee Code Annotated section 29-26-122. It is undisputed that he did not do so. Accordingly, the trial court did not err in dismissing his complaint, *in toto*, with prejudice. Tenn. Code Ann. § 29-26-122.

## V. Conclusion

For the foregoing reasons, we affirm the trial court's order dismissing Appellant's complaint with prejudice. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed to the Appellant, Joshua Cathey, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE

---

00677-COA-R3-CV, 2016 WL 6996366, at *4 (Tenn. Ct. App. Nov. 30, 2016), *appeal denied* (Feb. 24, 2017), all of Appellant's asserted claims originate from the same alleged conduct, *i.e.* the altering of the children's health care records.