FILED

01/22/2018

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 8, 2017 Session

## C.D. ET AL. V. KEYSTONE CONTINUUM, LLC DBA MOUNTAIN YOUTH ACADEMY

**Appeal from the Circuit Court for Johnson County**
**No. CC-15-CV-7     Jean A. Stanley, Judge**

_____

**No. E2016-02528-COA-R3-CV**

_____

The plaintiff, C.D., a minor, was a resident of Mountain Youth Academy, a trauma-focused residential treatment facility,[1] when he got into a physical altercation with an employee of the defendant Keystone Continuum, LLC doing business as Mountain Youth Academy. The employee, Jacob Spencer, is described by the defendant as a "mental health associate." The plaintiffs describe him as a "third shift night guard." The minor's mother filed this action, proceeding both individually and on behalf of her son. The complaint alleges, among other things, that Spencer pulled the minor plaintiff to the ground and stomped on his foot, causing him injury. Defendant moved to dismiss and/or for summary judgment, arguing that the complaint in this case alleges health care liability claims. Defendant argued that because of plaintiffs' (1) failure to provide pre-suit notice under the Tennessee Health Care Liability Act (the THCLA), Tenn. Code Ann. § 29-26-121 (Supp. 2017), and (2) their failure to file a certificate of good faith with the complaint, *id.* § 29-26-122, the lawsuit should be dismissed with prejudice. The trial court held that plaintiffs' claims sounded in health care liability. It dismissed the mother's action with prejudice. The court also dismissed the minor's action, but did so without prejudice.[2] Defendant appeals, arguing that the minor's action should have been dismissed with prejudice. The plaintiffs also present issues. They argue that the trial court erred in ruling that their claims are based upon health care liability. Additionally and alternatively, plaintiffs argue that their claims fall within the "common knowledge" exception to the general requirement of expert testimony in a health care liability action. We hold that plaintiffs' claims for assault and battery are unrelated to the provision of, or

_____

[1] Mountain Youth Academy "offers individualized treatment utilizing intensive multi-disciplinary approaches toward the treatment of children."

[2] Apparently, the "without prejudice" designation was because the court was dealing with a minor's cause of action.

failure to provide, health care services. As a consequence of this, we hold that the plaintiffs' assault and battery claims do not fall within the ambit of a "health care liability action" as defined by the statute. We further hold that plaintiffs' direct claims against the defendant, for negligent supervision and/or training of its employees, are health care liability claims but ones involving matters that ordinary laypersons will be able to assess by their common knowledge. Hence, expert medical testimony is not required. The trial court's judgment dismissing the plaintiffs' claims for assault and battery is vacated. We further hold that mother's failure to provide the defendant with pre-suit notice mandates a dismissal of her claim for negligent supervision and/or training, but that dismissal should have been without prejudice rather than with prejudice. Accordingly, the trial court's judgment on this part of mother's claim is modified to reflect that the dismissal is without prejudice. We affirm the trial court's judgment dismissing the minor's claim of negligent supervision and/or training and further affirm the trial court's judgment that this dismissal is without prejudice.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated in Part and Affirmed in Part as Modified; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which RICHARD H. DINKINS, and THOMAS R. FRIERSON, II, J., joined.

Elizabeth M. Hutton and Stephanie E. Stuart, Johnson City, Tennessee, for the appellant, Keystone Continuum, LLC, dba Mountain Youth Academy.

Thomas C. Jessee, Johnson City, Tennessee, for appellees, C.D., by and through his mother, J.D., and J.D., individually.

**I.**

The minor plaintiff was twelve or thirteen years old at the time of the incident. His affidavit summarizes his allegations of what happened:

> In 2013, my mother filed a [p]etition asserting that I was an unruly child. I was served with the [p]etition and a hearing was held on the [p]etition. The matter was continued to determine whether my behavior would improve.
>
> Later, in September 2013, I become defiant towards my mother. I also pushed my mother and her boyfriend at the time. I called the police. When the police officers came, I

2

became defiant towards the officers and spit on one of the officers. I was placed under arrest by the officers and taken to juvenile detention. Two days later, a hearing was held before the Juvenile Court for Washington County, Tennessee. . . . At the hearing, the judge ordered that my mother take me to Mountain Youth Academy. I was given one day to pack my belongings and then my mother took me to Mountain Youth Academy.

I did not know how long I would have to stay at Mountain Youth Academy, but I understood that I would be on "lock down" and that I could only have visitors on the weekend.

Jacob Spencer was a third shift night guard. It was his responsibility to take me from my room to the bathroom so I could get ready for the day (brush my teeth, etc.). Jacob Spencer never counseled me or participated in any group counseling sessions with me.

On March 18, 2014,[3] I asked Jacob if I could get my hygiene box, which contained my toothbrush. Jacob would not let me get my hygiene box and I became upset and started hitting things. Jacob then went into my room and started taking my personal items, which made me more upset. Jacob tried to put me in a hold and I accidentally tore the cuff on his sleeve. Jacob grabbed my right shoulder and pushed the back of my left shoulder, causing me [to] turn and fall to the ground. As I was lying on the ground, Jacob stomped on my right foot.

(Footnote added; numbering in original omitted.)

Defendant filed a "motion to dismiss and/or motion for summary judgment." It argued that all of the plaintiffs' claims are health care liability causes of action, and that plaintiffs' failure to provide pre-suit notice and include a certificate of good faith with the complaint is fatal to their action. The trial court held that the claims are health care liability actions and dismissed the mother's action with prejudice, and the minor plaintiff's action without prejudice. Defendant timely filed a notice of appeal.

---

[3] The defendant asserts that the actual date of the incident was April 18, 2014. This discrepancy is not definitively clarified in the record, but neither party asserts it as an issue or argues that it is pertinent to the issues presented on appeal.

## II.

The defendant raises the issue of whether the trial court erred in refusing to dismiss the minor plaintiff's action with prejudice. The plaintiffs raise the issue of whether the trial court erred by holding that their suit was one for health care liability.[4]

## III.

The well-established general rule is that "[a] motion to dismiss for failure to state a claim is the proper method for challenging whether a plaintiff has complied with the THCLA's pre-suit notice and certificate of good faith requirements." *Youngblood ex rel. Estate of Vaughn v. River Park Hosp., LLC*, No. M2016-02311-COA-R3-CV, 2017 WL 4331042, at \*1 (Tenn. Ct. App., filed Sept. 28, 2017), quoting *Ellithorpe v. Weismark*, 479 S.W.3d 818, 823 (Tenn. 2015); *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 307 (Tenn. 2012). Following a hearing on defendant's initial motion to dismiss and/or for summary judgment, the trial court entered an order stating:

> upon the filings in this matter and argument of counsel the
> Court finds that there is insufficient evidence before the Court
> to make a ruling at this time. The Defendant's Motion may
> be reset for hearing once there has been sufficient discovery.

After the entry of this order, the plaintiffs filed several affidavits in support of their position. Defendant had earlier filed a statement of undisputed material facts based upon two other affidavits, pursuant to Tenn. R. Civ. P. 56.03. Under Tenn. R. Civ. P. 12.02,

> [i]f, on a motion asserting the defense numbered (6) to
> dismiss for failure to state a claim upon which relief can be
> granted, matters outside the pleading are presented to and not
> excluded by the court, the motion shall be treated as one for
> summary judgment and disposed of as provided in Rule 56,
> and all parties shall be given reasonable opportunity to
> present all material made pertinent to such a motion by Rule
> 56.

As this Court has recently stated,

---

[4] Plaintiffs assert in the body of their brief that the trial court erred in denying their oral motion to take a voluntary nonsuit, made during the hearing on the motion to dismiss and/or for summary judgment. This issue is not properly before us because plaintiffs did not include it in their statement of issues.

4

[a] motion to dismiss is converted to a motion for summary judgment when the trial court states, or the evidence shows, that it considered matters outside the pleading.

Furthermore, it has long been the rule that "[i]t is left to the discretion of the trial judge whether or not to receive matters outside the pleading on a motion to dismiss for failure to state a claim," and "extraneous matter may not be considered if the court excludes it."

*England v. Schnur*, No. E2017-00085-COA-R3-CV, 2017 WL 5901019, at *2-3 (Tenn. Ct. App., filed Nov. 29, 2017) (internal quotation marks and citations omitted). In the present case, the trial court clearly evinced an intent to consider matters presented outside the pleadings. Accordingly, the trial court considered the motion before it as one for summary judgment.

Our standard of review of a grant of summary judgment is as stated by the Supreme Court:

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness.

\* \* \*

[I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. . . . The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.

5

***Rye v. Women's Care Ctr. of Memphis, MPLLC***, 477 S.W.3d 235, 250, 264-65 (Tenn. 2015) (italics in original).

In making the determination of whether summary judgment was correctly granted,

> [w]e must view all of the evidence in the light most favorable to the nonmoving party and resolve all factual inferences in the nonmoving party's favor. ***Martin v. Norfolk S. Ry. Co.***, 271 S.W.3d 76, 84 (Tenn. 2008); ***Luther v. Compton***, 5 S.W.3d 635, 639 (Tenn. 1999); ***Muhlheim v. Knox Cnty. Bd. of Educ.***, 2 S.W.3d 927, 929 (Tenn. 1999). If the undisputed facts support only one conclusion, then the court's summary judgment will be upheld because the moving party was entitled to judgment as a matter of law. *See **White v. Lawrence***, 975 S.W.2d 525, 529 (Tenn. 1998); ***McCall v. Wilder***, 913 S.W.2d 150, 153 (Tenn. 1995).

***Wells Fargo Bank, N.A. v. Lockett***, No. E2013-02186-COA-R3-CV, 2014 WL 1673745 at *2 (Tenn. Ct. App., filed Apr. 24, 2014).

## IV.

## A.

The dispositive issue is whether the trial court erred in determining that plaintiffs' claims fall within the statutory definition of a health care liability action:

> any civil action, . . . alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability on which the action is based[.]

Tenn. Code Ann. § 29-26-101(a)(1). It is undisputed that defendant is a "health care provider." That concept is defined by section 101(2)(C) as "[a] nongovernmental health facility licensed under the Mental Health, Developmental Disability, and Personal Support Services Licensure Law, compiled in title 33, chapter 2, part 4[.]" We have observed that

> [t]his statutory definition [of § 29-26-101(a)(1)] is conclusive, and it casts a wide net over civil claims that arise within a

6

medical setting. In fact, this Court has previously remarked that "it should not be surprising if most claims now arising within a medical setting constitute health care liability actions." *Osunde* [*v. Delta Med. Ctr.*, 505 S.W.3d 875, 884-85 (Tenn. Ct. App. 2016)]. We hasten to add, however, that "whether a health care liability action is implicated is entirely dependent on whether the factual allegations meet the definition outlined in the statute." *Id*. at [885] n.6.

*Cordell v. Cleveland Tenn. Hosp., LLC*, No. M2016-01466-COA-R3-CV, 2017 WL 830434, at *5 (Tenn. Ct. App., filed Feb. 27, 2017).

The factual allegations supporting plaintiffs' claims are simple and straightforward: they allege that Spencer, acting as an employee of defendant, pushed or pulled the minor plaintiff to the ground and "stomped on his right foot." In determining whether these allegations involve "an injury related to the provision of, or failure to provide, health care services," we are guided by a trio of opinions recently released by this Court.[5] In *Lacy v. Mitchell*, No. M2016-00677-COA-R3-CV, 2016 WL 6996366 (Tenn. Ct. App., filed Nov. 30, 2016) (*Lacy I*), the plaintiff alleged a chiropractor injured her by (1) jumping on her back while she was on a chiropractic table, and (2) hitting her with a medical folder as the chiropractor exited the room. The plaintiff argued that her claims "were for 'beating and assault,' rather than health care liability." *Id.* at *1. We stated in *Lacy I* that the first allegation

> indicates that Ms. Lacy was injured while lying on a chiropractic table, during a chiropractic appointment, when a chiropractor (Dr. Mitchell) applied force to her back by jumping on it. In our view, such an injury would undeniably be related to the provision of chiropractic health care services.

*Id.* at *3. However, regarding the claim that the chiropractor hit the plaintiff with a medical folder, the *Lacy I* Court stated:

> While that statement also alleges that Ms. Lacy was injured during a chiropractic appointment when a chiropractor applied force to her back, it does not contain any other indication that the alleged wrongful act was related to the provision of chiropractic health care services. Rather, it

---

[5] In fairness to the trial court and the parties, we note that these three opinions were released after the trial court made its ruling in the present case.

alleges that the act took place *after* Dr. Mitchell finished jumping on her back—an act that we determined was related to the provision of health care services. Additionally, unlike the first claim, it does not state that Ms. Lacy was lying on the chiropractic table when Dr. Mitchell hit her in the back with her medical folder. Rather, it states only that Dr. Mitchell struck Ms. Lacy with the folder "as he walked out the door." Thus, while it is still reasonable to infer that the alleged act was related to the provision of heath care services, it is equally reasonable, in our view, to infer that the act took place after Dr. Mitchell finished providing health care services to Ms. Lacy and was leaving the appointment. As such, it is not apparent from the face of Ms. Lacy's complaint that the second claim fits the THCLA's definition of a "health care liability action."

*Id.* at *4 (emphasis in original).

In *Lacy v. St. Thomas Hosp. West,* No. M2016-01272-COA-R3-CV, 2017 WL 1827021 (Tenn. Ct. App., filed May 4, 2017) (*Lacy II*), the same plaintiff brought another separate action against a different set of health care providers, again asserting "several distinct claims, some of which are health care liability claims and some are not." *Id.* at *1. We held as follows:

Ms. Lacy makes additional allegations against the Appellees that are not clearly defined as health care liability claims. Ms. Lacy alleges that "[Dr. Clendenin] physically beat [her] after the shock" hitting her four times on the front part of her right shoulder. Likewise, Ms. Lacy alleges that Mr. Bragdon "beat her three to four times in the shoulder" and that he took her medical file and "beat [her] from head to ankle up and down never saying a word." In regard to Premier Radiology, Ms. Lacy alleges that the MRI technician "beat" her leg four times causing bruising. Under Tennessee Rule of Civil Procedure 12.02, we must presume that Ms. Lacy's allegations are true, and we must give her the benefit of all reasonable inferences. Using the plain and ordinary meaning of the language contained in Ms. Lacy's complaints, we cannot conclude that the alleged willful and malicious "beatings" by Dr. Clendenin, Mr. Bragdon, and the MRI technician constitute health care liability claims under the THCLA. *It strains*

8

> *credulity to view a willful assault as being related to the provision of health care services.*

*Id.* at *4 (brackets in original; emphasis added).

In the ***Cordell*** case, the plaintiff alleged that she had been raped and battered by hospital employees while she was unconscious at the hospital. 2017 WL 830434, at *1. The defendant hospital argued that her claims fell within the definition of a health care liability action. This Court disagreed, reasoning and ruling as follows:

> we see no facts alleging that a health care provider caused an injury related to the provision of, or failure to provide, health care services. In seeking relief against the Appellees, Ms. Cordell's original complaint asserted three separate causes of action.
>
> &ast;   &ast;   &ast;
>
> each of these legal theories is based on the same factual predicate. Each count alleges that an injury has occurred due to the purported rape perpetrated by Mr. Parsons and potential other unnamed individuals working for SkyRidge.
>
> &ast;   &ast;   &ast;
>
> Here, the threshold question is whether the alleged rape perpetrated by Mr. Parsons is *related to* the provision of, or failure to provide, health care services. . . . Under the statute, health care services "includes care by health care providers" and "also includes staffing, custodial or basic care, positioning, hydration and similar patient services." Tenn. Code Ann. § 29–26–101(b). In our view, it strains credulity to view the willful and malicious actions such as those alleged here as being related to the provision of, or failure to provide, health care services. . . . [W]ere we to say otherwise, this would essentially mean that any actions or deeds by a health care provider, if committed within the confines of a medical facility, give rise to a health care liability action.
> &ast;   &ast;   &ast;

9

> Just as the act of hitting a plaintiff on the back with a medical folder does not involve an injury related to the provision of, or failure to provide, health care services, we fail to see how a defendant's alleged rape of a patient is related to the provision of, or failure to provide, health care services.

*Cordell*, 2017 WL 830434, at *5, *6, *7 (emphasis in original; footnotes in original omitted).

As similar to these three cases, the allegations in the present action against the employer, based on the actions of its employee, do not allege that a health care provider caused an injury related to the provision of, or failure to provide, health care services. The plaintiffs' claims are for willful assault and battery. They have alleged that the employee Spencer's role was essentially that of a security guard. Defendant characterizes his position differently; at the summary judgment hearing, its counsel stated the following about its employee:

> He was a mental health associate. He'd held that position for about seven months. He'd been certified through Crisis Prevention Institute. He's been trained extensively to deal with behavioral issues that may arise while caring for children. He's in a facility, a locked unit with about twelve minor children that all have mental health issues. He doesn't have to deal with – he's not there to counsel the child. He's not a Ph.D. or an M.D. He's there to maintain the safety of these children, and he is trained to do so while dealing with children with mental health diagnoses.

In our review of a grant of summary judgment, it is axiomatic that we must view the evidence in the light most favorable to the plaintiff and resolve all factual inferences in his/her favor. However, even if we were to conclude that Spencer's role was more of a professional "mental health associate" as opposed to a "third shift night guard," both *Lacy* opinions teach that this distinction is not dispositive. In *Lacy I*, the defendant was unquestionably a professionally trained and certified medical provider – a licensed chiropractor. 2016 WL 6996366, at *1. In *Lacy II*, the defendants included an M.D., a certified physician assistant, and an MRI technician. 2017 WL 1827021, at *1, *4. Despite their positions or training, the *conduct* the *Lacy* defendants were accused of did not involve an allegation of injury caused by the provision of health care services or lack thereof. We held in *Lacy* II that "[i]t strains credulity to view a willful assault as being related to the provision of health care services." *Id.* at *4. That holding is applicable in this case to the plaintiffs' allegations of assault and battery, based on the *respondeat*

*superior* doctrine.  We vacate the trial court's judgment dismissing these claims. (Italics in original.)

**B.**

As to the remaining allegations in the complaint, those charges allege that defendant negligently failed to supervise or train the employees of Mountain Youth Academy "in order to ensure the safety of the minor residents."  We discussed such an allegation, albeit in dicta, in **Cordell**, stating in pertinent part:

> Negligence is not charged against [the hospital] for failing to protect or monitor [the plaintiff].  As far as the original complaint will admit, the liability of [the hospital] appears to be predicated entirely on the doctrine of respondeat superior.
>
> *        *        *
>
> [H]ad the original complaint brought a negligence claim against [the hospital] directly and asserted that it was liable due to its failure to provide appropriate care, supervision, or monitoring, the complaint would have alleged that a "health care provider . . . caused an injury related to the . . . failure to provide . . . health care services." . . .
>
> In this vein, although we would not dispute that Mr. Parsons' duties in watching over Ms. Cordell's hospital room involved health care services as that term is defined by statute, *see* Tenn. Code Ann. § 29–26–101(b) (stating that health care services include "staffing, custodial or basic care"), we do not see anything in the original complaint alleging that Mr. Parsons' failure to provide proper security or monitoring resulted in an injury to Ms. Cordell.

2017 WL 830434, at \*6, \*7; *accord* **Youngblood**, 2017 WL 4331042, at \*3-\*4 (quoting **Cordell** and holding allegation that hospital negligently failed to provide appropriate supervision and monitoring of patient left with hot coffee presents a health care liability action).

In the present case, we agree with the trial court's ruling that the claims of negligent supervision and training fall within the definition of "health care services," defined at Tenn. Code Ann. § 29-26-101(b) as including "staffing, custodial or basic care

. . . and similar patient services." However, as we observed in ***Zink v. Rural/Metro of Tenn., L.P.***, 531 S.W.3d 698, 706 (Tenn. Ct. App. 2017),

> a determination that a claim falls within the THCLA does not automatically trigger all of the statute's requirements. The need for expert proof will not lie if the matter is within the common knowledge of a layperson, and if there is no need for expert proof, a plaintiff's complaint will not fail for failure to attach a certificate of good faith under section 29–26–122. *See* Tenn. Code Ann. 29–26–122(a) (2012) ("In any health care liability action *in which expert testimony is required* by § 29–26–115, the plaintiff or plaintiff's counsel shall file a certificate of good faith with the complaint.") (emphasis added). Thus, although determining that a claim constitutes a health care liability action will subject it to the pre-suit notice requirement in section 29–26–121, additional analysis is needed to determine whether expert proof is necessary.

(Emphasis in original.) ***Zink*** also involved a claim of assault and battery, allegedly by an EMT who struck a patient while he was strapped to a gurney. ***Id.*** at 703. However, the issue of whether the allegation that the EMT battered the plaintiff stated a health care liability claim was not before this Court in that case. ***Id.*** ("Mr. Zink has raised no issue on appeal with regard to the trial court's determination that Mr. Zink's complaint alleged a health care liability claim"). Instead, the ***Zink*** plaintiff argues that "his claims would fall within the 'common knowledge' exception to the requirement of expert testimony . . . because the alleged act of negligence was within the common knowledge of a layperson." ***Id.*** at 704. After reviewing pertinent case law authorities discussing and applying the common knowledge exception, we held:

> we determine that it would be within the common knowledge of a layperson whether an EMT's alleged negligent, reckless, or intentional striking of a patient's face while the patient is strapped to a gurney would fall below the standard of care. Because this alleged act would not require expert proof to "aid in the understanding of this issue," the trial court erred by failing to determine that this case fell within the common knowledge exception. Because no expert proof was necessary to establish negligence, no certificate of good faith would be required pursuant to Tennessee Code Annotated § 29–26–122. Therefore, the trial court should not have

> dismissed Mr. Zink's action with prejudice for failing to file a
> certificate of good faith.

*Id.* at 707; *see also* ***Osunde***, 505 S.W.3d at 888-89 (allegation that radiology technician's provision of a faulty, uneven stool injured plaintiff is within the common knowledge of a layperson); ***Redick v. St. Thomas Midtown Hosp.***, 515 S.W.3d 853, 859 (Tenn. Ct. App. 2016) (allegations that "Hospital's employee failed to comply with the fall precautions by placing the commode out of reach of the bed and then failing to assist Plaintiff to transfer from the commode back to the bed . . . are within the common knowledge of laypersons").

In the present case, plaintiffs argue that, as in the above cited cases, their allegations of Mountain Youth Academy's negligent failure to supervise and/or train its employees involve matters that ordinary laypersons are able to assess by their common knowledge, without the need for expert medical testimony assistance. We agree. The allegations essentially state a claim that the defendant failed to provide adequate security or protection for its child residents. The evidence presented in the record suggests that Mountain Youth Academy is in some ways a mental health treatment facility, and, at the same time, in other ways, a juvenile detention facility. We believe the trier of fact will be able to review and assess the proof of defendant's measures to provide security for the residents and determine whether they were adequate and appropriate, without the assistance of expert testimony. As we observed in ***Newman v. Guardian Healthcare Providers, Inc.***, No. M2015-01315-COA-R3-CV, 2016 WL 4069052, at *4 (Tenn. Ct. App., filed July 27, 2016),

> [d]ismissal without prejudice is the proper sanction for noncompliance with the pre-suit notice requirement of Tenn. Code Ann. § 29-26-121. ***Ellithorpe v. Weismark***, 479 S.W.3d 818, 829 (Tenn. 2015) (quoting ***Foster v. Chiles***, 467 S.W.3d 911, 916 (Tenn. 2015)). However, failure to comply with the certificate of good faith requirement codified at Tenn. Code Ann § 29-26-122, results in dismissal of the complaint with prejudice. *Id.*

## V.

In summary, we dismiss the plaintiffs' claim against Keystone based on negligent supervision and/or training, but we do so without prejudice. Also, we vacate the trial court's judgment dismissing the plaintiffs' assault and battery claims; hence, those claims will proceed. The case is remanded for further action consistent with this opinion. Costs

on appeal are assessed to the appellant, Keystone Continuum, LLC, dba Mountain Youth Academy.

_____
CHARLES D. SUSANO, JR., JUDGE