IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 25, 2024 Session

## ROBERT DICKERSON v. UNITED MEDICAL TRANSPORTATION LLC ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT-0105-22     Mary L. Wagner, Judge**

_____

**No. W2023-01084-COA-R3-CV**

_____

After suffering an injury, patient alleged that in-patient facility was negligent in failing to inform medical transportation company of his physical limitations prior to his discharge from the facility. In response to the facility's summary judgment motion, patient relied on the testimony of an "expert in passenger ground transportation." The trial court found that issues of fact remained as to patient's ambulation needs, but granted summary judgment as to standard of care and breach because patient's expert was not competent to testify under the Tennessee Health Care Liability Act, and the common knowledge exception did not apply. Finding no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ARNOLD B. GOLDIN, J., joined.

David E. Gordon, Elissa M. Coombs, Memphis, Tennessee, for the appellant, Robert Dickerson.

Ashley D. Cleek and Hugh Francis, IV, Jackson, Tennessee, for the appellees, UHS of Lakeside, LLC d/b/a Lakeside Behavioral Health System.

## OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff/Appellant Robert Dickerson filed this action in the Shelby County Circuit

Court ("the trial court") against Defendant United Medical Transportation, LLC ("United"), and Defendant/Appellee UHS of Lakeside, LLC d/b/a Lakeside Behavioral Health System ("Lakeside") on January 11, 2022. In his complaint, Mr. Dickerson alleged that he was discharged as an inpatient at Lakeside on November 25, 2020, and subsequently transported home by United. Mr. Dickerson alleged that he was not assisted by the United driver while disembarking the United vehicle, which resulted in him losing his balance, falling to the ground, and sustaining injuries and damages. Mr. Dickerson alleged that Lakeside had failed to inform United of his medical conditions, including his fall-risk status, while arranging for his transportation. The complaint asserted that both United and Lakeside were independently negligent, and that Lakeside was also vicariously liable for United's negligence pursuant to the doctrine of respondeat superior. Included with the complaint were pre-suit letters of potential claims and records release authorizations sent to United and Lakeside, and a certificate of good faith.

In February 2022, United moved to dismiss the claim against it on the basis that it was not a health care provider as defined by the Health Care Liability Act ("the HCLA"), Tennessee Code Annotated section 29-26-121. Thus, Mr. Dickerson could not rely on the HCLA's pre-suit notice provision to extend the one-year statute of limitations on his negligence claim, and his complaint was time-barred. United then filed a motion for summary judgment in May 2022, again asserting that Mr. Dickerson's attempt to extend the statute of limitations with pre-suit notice was not effective against it. The trial court later granted United's motion for summary judgment, finding that Mr. Dickerson could not rely on the pre-suit notice provision within the HCLA to extend the applicable statute of limitations. The grant of summary judgment for United is not at issue in this appeal.

The crux of this appeal is instead the motion for summary judgment filed by Lakeside in June 2022. Therein, Lakeside argued that its duty to Mr. Dickerson ended when he was discharged from its facility and transferred into United's custody. Alternatively, Lakeside argued that because Mr. Dickerson "was not a fall risk, had no recent history of falls, and required no assistive devices for mobility or ambulation when he was admitted to Lakeside[,]" the standard of care did not require Lakeside to inform the transportation broker that Mr. Dickerson had been placed on fall precautions. Lakeside noted that Mr. Dickerson had not presented any expert testimony, and further argued that it had affirmatively negated the essential elements of Mr. Dickerson's negligence claim through the sworn testimony of George Kohlbacher, Mr. Dickerson's attending therapist and "discharge planner," and Dr. Mark Hammond, a licensed "internal medicine physician specializing in geriatric medicine."[1] Lakeside also argued that it could not be held vicariously liable for any negligence by United because there was no agency relationship

---

[1] The proffered declarations of both experts explained, inter alia, that "Mr. Dickerson could ambulate independently and required no assistance[,]" and "never suffered any falls during his Lakeside admission[.]" Accordingly, both of Lakeside's experts opined that the standard of care did not require informing the transportation company that Mr. Dickerson had been placed on fall precautions during his Lakeside admission or that he required assistance with ambulation.

- 2 -

between the entities and, alternatively, because Mr. Dickerson's direct claim against United was barred by the statute of limitations.

In his March 2023 response to Lakeside's summary judgment motion, Mr. Dickerson argued that Lakeside owed him a duty and breached that duty prior to his discharge. Mr. Dickerson asserted that he was properly classified as a fall risk during his entire stay at Lakeside and that he "has very poor vision and is nearly blind." Mr. Dickerson further asserted that Shelva Humphrey, his sister and full-time caregiver, had informed Lakeside of his vision problems on multiple occasions. Mr. Dickerson argued that the standard of care required Lakeside to assess his physical needs and limitations and then inform the medical transportation broker of those limitations when arranging for his post-discharge transportation. Lakeside's failure to either assess or communicate Mr. Dickerson's physical condition was therefore a breach of its duty that occurred prior to his discharge from the facility.

With his response, Mr. Dickerson included the affidavit of his sister and the declaration of his optometrist, both of whom discussed his vision problems and related difficulties getting around by himself. Mr. Dickerson also provided the "Expert's Written Statement" of Mr. Joseph Rubino, "an expert in passenger ground transportation[,]" which stated that Mr. Rubino was familiar with the "standard of care required by medical facilities in arranging transportation" and "the recognized standard of acceptable practice in the ground transportation industry in Memphis, Tennessee." Mr. Rubino opined that Lakeside was negligent in failing to communicate Mr. Dickerson's physical conditions and limitations when arranging for medical transportation, and that this negligence caused Mr. Dickerson to sustain injuries that would not have otherwise occurred.

Lakeside's motion was heard on May 4, 2023. As an initial matter, there was no dispute that Lakeside could not be held liable for any actions by United, such that summary judgment would be granted on Mr. Dickerson's vicarious liability claims against Lakeside.

Lakeside argued that no duty was owed to Mr. Dickerson after he was discharged as a patient and transferred into the care of United, and that the discharge planner, Mr. Kohlbacher, complied with the standard of care prior to Mr. Dickerson's discharge. Lakeside emphasized that Mr. Dickerson's proposed expert, Mr. Rubino, was not qualified under the HCLA to offer an opinion of the applicable standard of care or causation. Lakeside further argued that because Mr. Dickerson had attempted to proffer expert proof, he could not rely on the common knowledge exception. Moreover, Mr. Kohlbacher's responsibilities did not fall within the knowledge of an ordinary layperson and expert proof was required.

Mr. Dickerson did not dispute that Mr. Rubino was not a health care provider expert. Instead, his argument was that the duty and breach thereof arose in relation to Mr. Kohlbacher's role as a discharge planner, not his position as Mr. Dickerson's therapist.

Thus, the issue at hand involved only the standard of care involved in arranging transportation, Mr. Rubino's field of expertise. Mr. Dickerson also argued that additional expert testimony was unnecessary, as the alleged negligence was so obvious as to be readily understood by a layperson.

Pursuant to the trial court's directive, Mr. Dickerson subsequently filed a supplemental response in relation to the competency of his expert testimony and whether expert testimony was needed. Mr. Dickerson argued that Mr. Rubino was competent to testify as an expert under the HCLA, explaining that because Mr. Rubino is not in a health care profession requiring licensure in Tennessee, his lack of such licensure did not entitle Lakeside to summary judgment. Alternatively, Mr. Dickerson argued that no technical or specialized knowledge was required to understand the importance of explaining his known physical limitations to United prior to his discharge from Lakeside, and that such communication did not require the exercise of medical judgment or decision-making. Mr. Kohlbacher's failure to do so, therefore, was so obviously a breach of the standard of care that no expert proof was necessary for a layperson to understand Lakeside's negligence.

In response, Lakeside argued that each element of a health care liability act claim needed to be proven through the testimony of an expert licensed and practicing in Tennessee or a contiguous state, with the element of causation also requiring that the expert practice in a profession permitted to make a medical diagnosis. Thus, because Mr. Rubino was not engaged in the practice of medicine and was not permitted to make a medical diagnosis, he was not qualified to offer an expert opinion under the HCLA. Lakeside also denied that the common knowledge exception obviated the need for expert proof, explaining that planning for Mr. Dickerson's discharge from Lakeside involved "reviewing the patient's medical records, talking to the patient's doctor and nurses, and, specifically, considering 'both psychiatric and medical diagnos[e]s[.]'" Thus, Mr. Kohlbacher was required to exercise technical or specialized knowledge, medical decision-making, and professional judgment, and his actions could not be understood by the average layperson without expert testimony. Finally, Lakeside argued that Mr. Dickerson had waived any application of the common knowledge exception.

By order of July 11, 2023, the trial court granted Lakeside's motion for summary judgment. First, the trial court found that genuine issues remained as to the material facts of Mr. Dickerson's mobility needs and fall risk. The trial court next considered Mr. Dickerson's argument that the common knowledge exception applied, and no expert proof was necessary. Finding that "[t]he alleged negligence included Mr. Kohlbacher's assessment of [Mr. Dickerson's] medical condition (i.e., vision), mobility and fall risk and determination of his needs based upon that assessment[,]" the trial court concluded that the alleged negligence was "not 'so obvious' [as] to fall under the common knowledge exception." Accordingly, the trial court considered the sufficiency of the expert proof offered by Mr. Dickerson. Because Mr. Rubino was not a medical professional licensed in Tennessee or a contiguous state, the trial court found that he did not meet the HCLA's

requirements for expert testimony. Without competent expert proof, the trial court found that Mr. Dickerson's evidence was insufficient to establish his claim. Moreover, as Mr. Dickerson failed to refute the expert proof provided by Lakeside with his own qualified expert testimony, the trial court found that Lakeside had affirmatively negated an essential element of Mr. Dickerson's claim regarding the standard of care. Summary judgment was therefore granted as to standard of care and breach.

## II. ISSUES PRESENTED

Mr. Dickerson raises the following issues, taken directly from his brief:

1. Whether the Plaintiff's expert meets the requirements of the HCLA.
2. Whether the common knowledge exception to the HCLA's expert requirement applies in this case.
3. Whether the trial court erred in granting Lakeside's summary judgment motion.

## III. STANDARD OF REVIEW

We review the trial court's grant of summary judgment de novo, with no presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *Abshure v. Methodist Healthcare-Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010)). As part of our review, we must "take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993) (citations omitted), *holding modified by Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1 (Tenn. 2008), *holding modified by Rye*, 477 S.W.3d 235. We similarly accept the evidence presented by the nonmoving party as true and resolve any doubts about the existence of a genuine issue of material fact in its favor. *TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 887 (Tenn. 2019) (citing *Martin v. Norfolk S. Ry.*, 271 S.W.3d 76, 84 (Tenn. 2008)).

A party is entitled to summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. When the party moving for summary judgment does not bear the burden of proof at trial, it "may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye*, 477 S.W.3d at 264. When a motion for summary judgment is made and supported as provided in Rule 56, the nonmoving party may not rest on the allegations or denials in its pleadings. *Id.* at 265. Instead, the nonmoving party must respond with specific facts showing that there is a

genuine issue of material fact to be resolved at trial. *Id.*

A fact is material "if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd*, 847 S.W.2d at 215. A "genuine issue" exists if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." *Id.* "Summary [j]udgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion." *Brooks Cotton Co. v. Williams*, 381 S.W.3d 414, 418–19 (Tenn. Ct. App. 2012) (quoting *Landry v. S. Cumberland Amoco*, No. E2009-01354-COA-R3-CV, 2010 WL 845390, at *3 (Tenn. Ct. App. March 10, 2010)).

## IV. ANALYSIS

There is no dispute that the claim against Lakeside constitutes a health care liability action as defined in the HCLA. *See* Tenn. Code Ann. § 29-26-101(a)(1) ("'Health care liability action' means any civil action . . . alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability on which the action is based[.]"), (b) ("Health care services to persons includes care by health care providers, which includes care by . . . agents, employees and representatives of the provider, and also includes staffing, custodial or basic care, positioning, hydration and similar patient services."); *Osunde v. Delta Med. Ctr.*, 505 S.W.3d 875, 884–85 (Tenn. Ct. App. 2016) ("Given the breadth of the statute, it should not be surprising if most claims now arising within a medical setting constitute health care liability actions."). Tennessee Code Annotated section 29-26-115(a) therefore sets out the burden of proof applicable to Mr. Dickerson's claim against Lakeside:

> In a health care liability action, the claimant shall have the burden of proving by evidence as provided by subsection (b):
>
> > (1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;
> > (2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and
> > (3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

Tenn. Code Ann. § 29-26-115(a). Through the expert testimony of Mr. Kohlbacher and Dr. Hammond, Lakeside successfully negated the standard of care and breach elements of Mr. Dickerson's claim. By showing that Mr. Dickerson did not have competent expert proof to rebut this testimony, Lakeside also demonstrated that Mr. Dickerson's evidence at the

summary judgment stage was insufficient to establish his claim. Because Lakeside thus satisfied its burden of production, it is entitled to summary judgment unless Mr. Dickerson effectively showed a genuine issue of material fact remained for trial. In order to resolve this issue, we must first determine what type of proof Mr. Dickerson was required to submit in support of his claim.

### A. Common Knowledge Exception

Generally, a health care liability plaintiff is required to prove his or her claim through expert testimony. *See, e.g.*, ***Young v. Frist Cardiology, PLLC***, 599 S.W.3d 568 (Tenn. 2020) (citing ***Shipley v. Williams***, 350 S.W.3d 527, 550 (Tenn. 2011)). However, this requirement is not absolute. Tennessee law provides that "expert testimony is not required where the act of alleged wrongful conduct lies within the common knowledge of a layperson." ***Osunde***, 505 S.W.3d at 886. "Ultimately[,] whether expert health care testimony is required . . . is determined on a case-by-case basis." ***Mears v. Nashville Ctr. For Rehab. & Healing, LLC***, No. M2022-00490-COA-R3-CV, 2023 WL 2681898, at *4 (Tenn. Ct. App. Mar. 29, 2023) (citing ***Jackson v. Burrell***, 602 S.W.3d 340, 348 (Tenn. 2020)). Our supreme court has concluded that the "fundamental consideration" when contemplating the application of the common knowledge exception is "whether the conduct at issue involved the exercise of medical judgment or skill. In other words, whether the alleged negligent conduct involved technical or specialized knowledge of a medical procedure or a patient's medical condition or whether the alleged negligent conduct involved medical decision-making[.]" ***Jackson***, 602 S.W.3d at 350 (citing Joseph H. King, *The Common Knowledge Exception to the expert Testimony Requirement for Establishing the Standard of Care in Medical Malpractice*, 59 Ala. L. Rev. 51, 56 (2007) (phrasing the inquiry as whether "[t]he specific decision making by the health care provider . . . involve[d] the exercise of uniquely professional medical skills, a deliberate balancing of medical risks and benefits, or the exercise of therapeutic judgment.")). The application of the common knowledge exception is a question of law reviewed de novo with no presumption of correctness. ***Mears***, 2023 WL 2681898, at *2 (citing ***Jackson***, 602 S.W.3d at 344).

Determining whether the common knowledge exception applies to this case requires an understanding of the specific conduct alleged to have been negligent.[2] Mr. Dickerson

---

[2] Lakeside argues that Mr. Dickerson has waived any consideration of the common knowledge exception based on his failure to include any reference to the doctrine in his complaint, and his filing of a certificate of good faith. *See* Tenn. Code Ann. § 29-26-122(a) (limiting the requirement to file a certificate of good faith to only those health care liability actions "in which expert testimony is required by § 29-26-115"). The party asserting waiver has the burden of proof. *See, e.g.*, ***Jackson***, 602 S.W.3d at 344 (citing ***Fayne v. Vincent***, 301 S.W.3d 162, 171 (Tenn. 2009)). Lakeside argues that ***Jackson*** requires a health care liability plaintiff to assert the common knowledge exception in his or her complaint to avoid waiver. Respectfully, we disagree.

In ***Jackson***, the Tennessee Supreme Court determined that the plaintiff's failure to expressly use

does not take issue with the care he received or the decision to classify him as a fall risk during his inpatient stay at Lakeside. Instead, Mr. Dickerson asserts that his allegations of negligence "are strictly limited to Mr. Kohlbacher's failure to communicate Mr. Dickerson's vision problems and fall risk status to the medical transportation company/broker when he was arranging for the medical transportation of Mr. Dickerson." He argues that no "specialized knowledge [is] needed to determine that a medical facility should inform a transportation company that the patient being transported has vision problems and is a fall risk." Although Mr. Kohlbacher also served as Mr. Dickerson's therapist during his time at Lakeside, Mr. Dickerson argues that the allegedly negligent conduct occurred as part of Mr. Kohlbacher's "discharge planner" role, which "simply required passing along . . . facts that were well documented throughout Mr. Dickerson's chart at Lakeside."

Mr. Dickerson thus likens the instant matter to cases where the plaintiffs did not allege that the medical treatment itself was negligent, but that the equipment used in the treatment was defective. In *Osunde v. Delta Medical Center*, the plaintiff was required to stand on a stool while an x-ray was taken of her ankle and was injured when the stool wobbled as she attempted to step down. 505 S.W.3d at 877. The plaintiff specifically disclaimed any basis for her negligence claim other than the provision of a faulty, uneven stool. *Id.* at 888–89. This Court found it to be "within the common knowledge of a layperson to determine whether the provision of an unstable stool is negligent[,]" and determined that no expert proof was necessary. *Id.* at 889.

Similarly, in *Mears v. Nashville Center for Rehabilitation & Healing, LLC*, the

---

the term "common knowledge exception" prior to appeal did not result in a waiver of the issue. *Id.* In so finding, the court emphasized that the plaintiff had raised and relied on the concept of the common knowledge exception in both the trial court and the intermediate appellate court, by (1) asserting in her complaint that no certificate of good faith was required; (2) arguing in opposition to a motion for summary judgment that a layperson would understand the actions of the defendant as negligent and that no expert proof was required; and (3) arguing that the exception applied before the Court of Appeals. *Id.* at 344–45. Moreover, the court found that the defendant had argued the merits of the common knowledge exception on appeal, such that the defendant "was not denied an opportunity to respond to this issue." *Id.* at 345. Ultimately, the court determined that to consider the issue waived would improperly "exalt form over substance." *Id.* at 345 (quoting *Powell v. Cmty. Health Sys., Inc.*, 312 S.W.3d 496, 511 (Tenn. 2010)). Thus, the court's main considerations were (a) whether the plaintiff had raised the common knowledge exception in the trial court and (b) whether the defendant had been able to offer an argument against the issue, rather than the specific methods by which the exception had been raised. *See also Fayne*, 301 S.W.3d at 171 ("While we endorse the continuing vitality and validity of the principle that parties will not be permitted to raise issues on appeal that they did not first raise in the trial court, we also hold that the party invoking this principle has the burden of demonstrating that the issue sought to be precluded was, in fact, not raised in the trial court."). Although Mr. Dickerson did not specifically raise the common knowledge exception in his complaint, he did argue that no expert proof was required pursuant to the exception in his response to Lakeside's motion for summary judgment. The exception was further argued by both parties at the summary judgment hearing, and again in their supplementary responses. We do not find the issue to have been waived.

patient was required by the nursing facility to use a shower chair while bathing and was injured when the chair's broken wheel lock and torn netting caused her to fall. 2023 WL 2681898 at *1. Again, the plaintiff did not take issue with the level of assistance she was provided while bathing, the facility's decision to use shower chairs, generally, or even the decision to use that specific type of shower chair. *Id.* at *6. Instead, the plaintiff only alleged that the provision of a broken shower chair was negligent, and so obviously negligent that no expert proof was required. *Id.* at *5. This Court agreed that "[w]hile allegations of negligence that challenge a choice of medical equipment may involve medical skill or judgment, [the plaintiff's] allegations that the specific shower chair she was provided was broken and thus defective need not be established by expert testimony." *Id.* at *6. Like the importance of providing functional equipment, Mr. Dickerson argues that the importance of communicating his physical limitations to the medical transportation company falls within the common knowledge of an average layperson.

Lakeside seems to agree that the standard of care would generally require a patient's physical limitations to be made clear to a transportation company. However, Lakeside argues that the determination of "what information needed to be conveyed to the transportation broker" involves the exercise of "professional judgment and decision making by a medical professional[.]" It argues that because Mr. Dickerson did not actually have any physical limitations, no limitations needed to be communicated. In his deposition, Mr. Kohlbacher explained that the discharging process required him to, inter alia, (1) review the patient's chart, which included his own assessments of the patient and notes from the patient's doctors and nurses; (2) collaborate with the patient's doctor, the facility's nursing staff, and the patient; and (3) "ensure that transport staff has all pertinent information regarding client/patient special challenges while being transported[,]" an assessment that included the consideration of both psychiatric and medical diagnoses. Lakeside does not dispute that Mr. Dickerson's medical chart included indications that he was a fall risk and had vision problems, but argues that these notations did not reflect Mr. Dickerson's actual ability to get around by himself without falling, as observed by Mr. Kohlbacher and other Lakeside medical staff.[3] Accordingly, Lakeside argues that Mr.

---

[3] This argument is enshrined in the expert testimony proffered by Lakeside. After listing his qualifications and the records he had reviewed, Dr. Hammond's declaration stated:

> 5. As reflected on the Standardized Intake Assessment and in Mr. Kohlbacher's Declaration, Mr. Dickerson was not a fall risk, had no recent history of falls, and required no assistive devices when he was admitted to Lakeside. The Lakeside records consistently reflect that Mr. Dickerson could ambulate independently and required no assistance with mobility. Although Mr. Dickerson was placed on fall precautions as the result of a nurse giving him an incorrect score on [a fall risk assessment], Mr. Dickerson never suffered any falls during his Lakeside admission which lasted almost a full month.
> 6. Under the circumstances, the recognized standard of acceptable professional practice ("the standard of care") did not require Mr. Kohlbacher or anyone else at Lakeside to advise the company that would arrange for Mr. Dickerson's transport home that he had been on fall precautions during his Lakeside admission or that he would require assistance with

Kohlbacher's decision regarding which information to communicate with United was the result of his professional medical judgment and did not fall within the common knowledge of a layperson.

We agree with Mr. Dickerson that the importance of providing a medical transportation company with pertinent information regarding a patient's physical limitations is obvious even without specialized medical knowledge. Yet, so too is it clear that the determination of the patient's limitations requires the exercise of medical judgment. Here, Mr. Kohlbacher testified that his decision regarding which information to pass along to the transportation broker was based on his review of Mr. Dickerson's chart in conjunction with his own medical assessments of Mr. Dickerson and the assessments of other medical staff at Lakeside. Thus, the allegedly negligent conduct is less the failure to provide information, and more the determination that certain information was not medically relevant, i.e., did not need to be communicated to United.

As such, the closer analogue is to cases involving the supervision of patients. In *Tyree v. Donelson Hospital, Inc.*, the patient had difficulty walking unassisted but repeatedly left his hospital bed on his own, despite warnings by hospital staff that he should not attempt to do so for fear of injury. No. 88-227-II, 1989 WL 13064, at *1 (Tenn. Ct. App. Feb. 17, 1989). Several days into his hospitalization, the patient fell after leaving his bed without assistance, sustaining injuries that proved fatal. *Id.* at *1–2. The administratrix of the patient's estate filed a complaint alleging that the hospital was negligent in failing to provide adequate restraints, attendants, or supervision for a patient known to be greatly susceptible to falling and thereby suffering bodily injury. *Id.* at *2. The Court of Appeals denied the plaintiff's assertion that the common knowledge exception applied and determined that expert medical testimony was required to prove the applicable standard of care. *Id.* at *5 (citing *Tucker v. Metro. Gov't of Nashville & Davidson Cnty.*, 686 S.W.2d 87 (Tenn. Ct. App. 1984) (finding the appropriate level of supervision for a catatonic patient to require expert medical evidence); *Murphy v. Schwartz*, 739 S.W.2d 777 (Tenn. Ct. App. 1986) (finding the appropriate level of supervision for a stroke victim to require expert medical opinion evidence)).

The negligence in *Newman v. Guardian Healthcare Providers, Inc.*, likewise involved the alleged failure to properly restrain or supervise a patient. No. M2015-01315-COA-R3-CV, 2016 WL 4069052 (Tenn. Ct. App. July 27, 2016). In that case, the plaintiff alleged that one of the psychiatric facility's patients known to be violent was not

---

ambulation.

In offering substantially the same opinion in his own declaration, Mr. Kohlbacher further explained: "If Mr. Dickerson had suffered one or more falls during his Lakeside admission, had used assistive devices such as a cane, walker, or wheelchair, or if my own personal observations of him had suggested that he needed assistance with ambulation, I would have so advised the [transportation broker] representative." No argument has been made that either of Lakeside's witnesses were not qualified to offer such opinions.

sufficiently supervised, allowing him to attack and fatally injure the plaintiff's husband, another of the facility's patients. *Id.* at *1. The plaintiff argued that no expert proof was required to support her allegations that the facility was negligent in failing to supervise or seclude a psychiatric patient known to be violent. *Id.* at *2. The Court of Appeals determined that "the question of whether and how to restrain and/or supervise a potentially dangerous mental patient involve[d] knowledge and understanding of his diagnosis and medical history." *Id.* at *7. Thus, expert proof regarding the mental and physical capabilities of the psychiatric patient was required to determine whether the facility provided him with the appropriate level of supervision or restraint. *Id.*; *see also* ***Higgins v. CoreCivic, Inc.***, No. E2022-01101-COA-R3-CV, 2023 WL 6973866 (Tenn. Ct. App. Oct. 23, 2023) (finding that allegations that a prison failed to meet the standard of care in housing an inmate with a history of seizures needed to be supported by proof from an expert familiar with the provision of medical care in a correctional setting).

Perhaps most similar to the facts before us is the case of ***Graniger v. Methodist Hospital Healthcare Systems, Inc.***, No. 02A01-9309-CV-00201, 1994 WL 496781 (Tenn. Ct. App. Sept. 9, 1994). There, the patient presented to the hospital with claims of pain and swelling in her legs. *Id.* at *1. After being examined by a doctor, the patient was left to get dressed and go to the nurse's station unassisted. In attempting to get down from the examination table, the patient fell and sustained injuries that required multiple surgeries. *Id.* The patient denied that any expert proof was required to establish that the hospital was negligent in failing to assist her down from the table despite being aware of the impaired condition of her legs. *Id.* Through expert affidavits, the hospital denied breaching the standard of care because although the patient had complained of leg pain, she was ambulatory before and during the examination, did not request any assistance, or otherwise indicate that assistance was necessary. *Id.* at *1–2. The Court of Appeals, in finding that the common knowledge exception did not apply and expert proof was required, emphasized that the "uncontroverted evidence [was] that the plaintiff walked into the emergency room and the examination room." *Id.* at *4.

The essential argument for the application of the common knowledge exception in these cases was that no medical knowledge was required to understand the importance of supervising patients susceptible to injury in the absence of adequate supervision. Yet this Court consistently found that the determination of the proper level of supervision was not so obvious as to be within the knowledge of the average layperson. In our view, the same analysis is applicable to the instant case. While no medical knowledge may be required to understand the importance of communicating a patient's ambulation needs to the entity in charge of transporting the patient, the determination of the level of assistance a patient requires is not so obvious as to be within the knowledge of the average layperson. Like in ***Graniger***, Lakeside provided expert testimony that, despite indications in his chart to the contrary, Mr. Dickerson did not require assistance for mobility and could ambulate independently while at the facility. The decision to not communicate that Mr. Dickerson needed assistance was therefore the result of "the exercise of uniquely professional medical

- 11 -

skills, a deliberate balancing of medical risks and benefits, or the exercise of therapeutic judgment." King, *supra*, at 56. Accordingly, we conclude that the common knowledge exception does not obviate the requirement for Mr. Dickerson to support his claim with competent expert proof to the contrary.

## B. Expert Testimony

When expert testimony is required, Tennessee Code Annotated section 29-26-115(b) "prescribes who is competent to testify to satisfy the requirements of subsection (a)." *Shipley*, 350 S.W.3d at 550. That section provides as follows:

> No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a), unless the person was licensed to practice in the state or a contiguous bordering state a profession or specialty which would make the person's expert testimony relevant to the issues in the case and had practiced this profession or specialty in one (1) of these states during the year preceding the date that the alleged injury or wrongful act occurred. This rule shall apply to expert witnesses testifying for the defendant as rebuttal witnesses. The court may waive this subsection (b) when it determines that the appropriate witnesses otherwise would not be available.

Tenn. Code Ann. § 29-26-115(b). "A trial court's determination of whether an expert is qualified to provide testimony is of critical importance to a claimant's [health care liability] action." *Shipley*, 350 S.W.3d at 538 (citing *Coyle v. Prieto*, 822 S.W.2d 596, 598 (Tenn. Ct. App. 1991) (observing that "plaintiff's case . . . stands or falls on the correctness of the trial court's ruling" that his expert was qualified to testify)). We review the trial court's decision to accept or disqualify an expert witness for an abuse of discretion. *See id.* at 551. The disqualification of a witness who meets the competency requirements set out in section 29-26-115(b) amounts to an abuse of discretion. *Id.*; *see also* *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) ("A trial court abuses its discretion only when it 'applie[s] an incorrect legal standard or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'").

Mr. Dickerson's argument that the trial court abused its discretion in disqualifying Mr. Rubino is two-fold. First, he argues that Mr. Rubino's experience as "an expert in ground transportation" is relevant to the issues in this case. Second, he argues that Mr. Rubino is qualified to offer expert proof, despite not being licensed in Tennessee or a contiguous state, because non-licensure is only disqualifying under section 29-26-115(b) when the purported expert is "in a health care profession requiring licensure under the laws of this state[.]" Thus, because there is no licensure requirement for the profession of arranging medical transportation, Mr. Rubino should not be disqualified for his lack of

licensure. Unfortunately for Mr. Dickerson, the same reasoning that requires expert proof in the first instance also supports the trial court's determination that Mr. Rubino was not qualified to provide such proof.

This Court has recently reaffirmed that "[t]he particular issues presented in a health care liability action determine whether an expert's practice or specialty is relevant." *Owens v. Vanderbilt Univ. Med. Ctr.*, No. M2021-01273-COA-R3-CV, 2023 WL 3522326, at \*4 (Tenn. Ct. App. May 18, 2023) (citing *Shipley*, 350 S.W.3d at 556). To be relevant, an expert's profession "must provide [him] with sufficient experience to make [him] knowledgeable about the issues which are the subject of [his] testimony." *Cox v. M.A. Primary & Urgent Care Clinic*, 313 S.W.3d 240, 260 (Tenn. 2010); *see also* Tenn. R. Evid. R. 401 (defining "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence").

As discussed, *supra*, Mr. Dickerson maintains that the only issue before us involves a medical facility's arrangement of transportation for a patient, making Mr. Rubino's testimony relevant. To be sure, we can recognize how Mr. Rubino's "experience in the ground transportation industry" could assist the trier of fact in understanding that a transportation company depends on the information provided by the sender of cargo to determine how to handle that cargo. In the context of medical transportation, Mr. Rubino's experience might establish that a medical transportation company relies on a facility's instructions regarding the assistance the company needs to provide to its passenger.

However, as we concluded in relation to the common knowledge exception, the issue before us actually requires the assessment of Mr. Dickerson's physical condition at the time of his discharge from Lakeside. The expert proof provided by Lakeside opined that Mr. Kohlbacher was not required to inform the medical transportation company that Mr. Dickerson required assistance with mobility because his medical assessment was that Mr. Dickerson did not require any assistance with mobility.[4] We are unwilling to assume that Mr. Rubino's experience with arranging ground transportation makes him suitably knowledgeable about whether a patient does or does not need help to walk, and we have not been provided with any evidence to establish otherwise.

Of particular note is that Mr. Rubino does not possess a medical degree. And although Mr. Rubino's statement includes that he is "familiar with the standard of care required by medical facilities in arranging transportation to individuals like [Mr.] Dickerson[,]" it does not include any indication that Mr. Rubino has any specific medical training. Indeed, while Mr. Rubino's curriculum vitae states that Mr. Rubino "has been a pioneer in elderly and disabled transportation in the United States, as well as in Non-

_____

[4] Again, there has been no argument in this case that either Mr. Kohlbacher or Dr. Hammond were not qualified to offer an expert opinion as to any of the essential elements of Mr. Dickerson's claim.

emergency Medical Transportation[,]" the focus is again on the transportation of elderly or disabled passengers, rather than on the assessment of a patient's needs. In the products liability context, this Court has approvingly cited a Pennsylvania district court for the principle that a plaintiff cannot "piggyback" an expert's "exposure to other [extra-disciplinary] subject areas onto his qualifications as an expert [in his discipline] and create a 'one-size-fits-all' mass of qualifications warranting his elevation to expert rank in those other areas." *King v. Danek Med., Inc.*, 37 S.W.3d 429, 436 (Tenn. Ct. App. 2000) (quoting *In Re: Orthopedic Bone Screw Prods. Liab. Litig.*, No. MDL 1014, 1997 WL 39583, at *4 (E.D. Penn. Jan. 23, 1997) (noting that the witness's "expertise in bioengineering [did] not necessarily make him particularly qualified to make such statements in the additional disciplines of law, medicine, orthopedics, FDA regulatory practice, conflicts of interest, market surveys, and clinical studies")); *see also Kidd v. Dickerson*, No. M2018-01133-COA-R3-CV, 2020 WL 5912808 (Tenn. Ct. App. Oct. 5, 2020) (declining to assume that the education and experience of a pharmacist witness qualified him to offer an expert opinion on the cause of the decedent's death).

The witness's actual medical experience proved critical in *Surber v. Mountain States Health Alliance*, No. E2019-01494-COA-R3-CV, 2020 WL 4803735 (Tenn. Ct. App. Aug. 18, 2020). There, the plaintiff relied solely upon the testimony of an "expert witness regarding hospital administration" to establish the standard of care and breach of that standard in his health care liability action against a hospital. *Id.* at *5. The plaintiff argued that the same witness's testimony had been accepted in support of a separate health care liability action appealed to the Tennessee Supreme Court. *Id.* (citing *Barkes v. River Park Hosp., Inc.*, 328 S.W.3d 829 (Tenn. 2010)). In that case, our supreme court did consider the testimony of the witness relevant to the standard of care required by a hospital's emergency room staff. *Barkes*, 328 S.W.3d at 833. However, along with that of the hospital administrator, the plaintiff in *Barkes* also presented the expert testimony of "a board-certified emergency medicine physician, and a cardiologist[.]" *Id.* at 832. The Court of Appeals denied that the hospital administrator's testimony was enough to establish a breach of the standard of care without the benefit of the testimony of "a qualified medical expert." *Surber*, 2020 WL 4803735, at *4.

In other words, while there is no express requirement that an expert witness in a health care liability be a medical doctor, some explanation that the witness's education or experience qualified the witness to offer an opinion is necessary. Here, although Mr. Rubino's experience arranging ground transportation may have enabled him to offer a competent opinion as to the preparations necessary to transport a disabled patient, no explanation has been provided to explain how his education or experience makes him competent to opine as to how Lakeside's medical staff failed to properly identify Mr. Dickerson's actual ambulation needs. Without such an explanation, we cannot say that the trial court abused its discretion in excluding Mr. Rubino's proof as to standard of care.[5]

---

[5] No argument has been raised on appeal that the trial court should have considered the declaration

- 14 -

Because Mr. Rubino would not have been qualified to offer an expert opinion as to whether Lakeside failed to properly determine Mr. Dickerson's mobility needs, we do not need to reach the issue of whether his lack of licensure was an appropriate ground for his disqualification. Thus, through its own expert testimony, Lakeside affirmatively negated the standard of care element of Mr. Dickerson's case. *See **Rye***, 477 S.W.3d at 264. And as Mr. Dickerson could provide no competent expert proof to dispute that of Mr. Kohlbacher and Dr. Hammond, Lakeside also effectively demonstrated that Mr. Dickerson's evidence at the summary judgment stage was insufficient to establish his claim. Mr. Dickerson's failure to provide competent expert proof to establish each essential element of his health care liability action leaves him unable to show that there was a genuine issue of material fact to be resolved at trial. ***Id.*** at 265. Accordingly, the trial court properly granted summary judgment in favor of Lakeside.

### C. Vicarious Liability

One final matter remains. In the posture of appellee, Lakeside has attempted to raise an issue for our consideration regarding the propriety of the trial court's grant of summary judgment as to Mr. Dickerson's vicarious liability claim. We decline to consider this aspect of the trial court's decision. As Mr. Dickerson points out in his reply brief, no argument was made that Lakeside was not entitled to summary judgment on this issue in the trial court proceedings and no argument has been raised on appeal that this ruling was in error. Lakeside therefore has no need for review of a decision in its favor and we will not offer a purely advisory opinion. *See **Shelby v. Shelby***, 696 S.W.2d 360, 361–62 (Tenn. Ct. App. 1985) (declining to address appellee's issue regarding the propriety of the trial court's consideration of certain evidence over his objection, when the court's ruling was in the appellee's favor even with the objection); Tenn. R. Ct. App. 6(a)(3) (requiring complaining parties to set forth the manner in which they were prejudiced by the alleged error).

### V. CONCLUSION

The judgment of the Shelby County Circuit Court is affirmed, and this matter is remanded to the trial court for further proceedings consistent with this Opinion. Costs of this appeal are taxed one-half to Appellant, Robert Dickerson, and one-half to Appellee, UHS of Lakeside, LLC d/b/a Lakeside Behavioral Health System, for which execution may issue if necessary.

---

of Mr. Dickerson's optometrist as expert proof establishing any of the elements of Mr. Dickerson's claim. *See* Tenn. R. App. P. 13(b) ("Review generally will extend only to those issues presented for review."). However, even if we were to consider the optometrist's statement that Mr. Dickerson had vision problems as proof of his ambulation needs, we decline to assume that the testimony would be sufficient to establish the standard of care expected of an in-patient facility, as it contained nothing to suggest the optometrist had any experience in such context. *See **Higgins***, 2023 WL 6973866.

- 15 -

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE